**STATE of Missouri, Respondent,**

v.

**Gilbert V. GLENN, Jr., Appellant.**

No. 53280.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, J. L. Anding, Special Asst. Atty. Gen., Pacific, attorneys for respondent.

Hildebrandt & Smith, Springfield, Attorneys for appellant.

FINCH, Presiding Judge.

This is an appeal from a conviction under § 561.011, subd. 1(1)[1] of making, with intent to defraud, a writing having legal efficacy or commonly relied upon in business or commercial transactions, which purported to be the writing of one Bud Perry and by his authority, when in fact he did not give such authority. Defendant was tried under the Second Offender Act and was sentenced by the trial court to a term of four years' imprisonment.

On appeal, defendant briefs two points. He claims that a judgment of acquittal should have been entered on the basis that there was insufficient evidence from which the jury could find that defendant, with intent to defraud, made an instrument having legal efficacy or commonly relied upon in business or commercial transactions. He also contends that the trial court should have sustained his motion to suppress the use in evidence of papers taken from his briefcase at the time of his arrest, and that it was error to admit such instruments into evidence. We affirm.

The State's evidence will support the following statement of facts: Leslie F. (Bud) Perry first met defendant on October 6, 1965, at the filling station of his brother, Bob Perry, in Springfield, Missouri.

At this and later meetings during October, defendant stated that he was a representative of Union Carbide and arranged to sell antifreeze to the Perrys. He further said that he was a representative of General Electric and had arranged to sell some clocks in Kansas City, but he could not do that in his own name. He asked to use Bud Perry's name and arranged with Perry to share in the profits.

At the meeting on October 8, the Perrys advanced $582 to defendant. Additional sums of $2,500 and $1,025 were advanced on October 14 and October 29.

On the latter date, defendant requested Bud Perry to sign some papers in connection with the sale of merchandise. Included therein were six blank printed statement forms with nothing filled in. There was no typing or writing on these forms at that time. Defendant counted down a certain number of spaces and indicated the line where Bud Perry was to sign. Defendant said he would fill out the sheets for the sales and return a copy to Bud Perry, but this was never done.

Defendant delivered three cases of antifreeze to the Perrys, but that was all.

Mrs. Bob Perry called the prosecuting attorney's office several times and complained about her husband's antifreeze transaction with defendant. As a result, on December 14, 1965, an investigator for the prosecuting attorney's office called defendant and asked him to come down to the office that day. Defendant did so and there talked to Mr. Yocum, the prosecuting

---

1. All statutory references are to RSMo 1959 and V.A.M.S.

attorney, and Mr. Hamilton, the investigator. They discussed the complaint which Mrs. Perry had made. There was no threat of prosecution or of an arrest made at that time. In response to the prosecutor's inquiry about the antifreeze sale to the Perrys, the defendant stated that Bud Perry was indebted to him and he was going to sue. He produced and exhibited what purported to be a $10,000 note[2] signed by Bud Perry plus another note also signed by Perry. This note was typed above the signature of Bud Perry on what was later identified by Perry as one of the blank invoice forms on which he had placed his signature on October 29, 1965, at defendant's request. Mr. Yocum requested permission to make a photostat of the $10,000 note. After some hesitation, the defendant consented, and a copy was made and the original note then returned to the defendant.

On December 15, 1965, the prosecuting attorney's office arranged for the issuance by a magistrate of a warrant for the arrest of defendant based on a violation of § 561.011, subd. 1(1) by the making by defendant of the $10,000 note in question.

Deputy Sheriff Craig and a city police officer were sent with the warrant to arrest the defendant. They went to his home, where they found defendant standing at the front door, with a briefcase in his hand. Officer Craig introduced himself and the police officer who accompanied him, but before the officers had done anything other than to identify themselves, the defendant invited them into the house. After they all went inside, Officer Craig showed the warrant to the defendant and advised him that he was under arrest.

The deputy sheriff testified that when he arrested the defendant, he advised him of his constitutional rights and then told him that he was going to search him incidental to the arrest. He then took the

briefcase from the defendant and handed it to the other officer, after which he proceeded to search the person of defendant. He searched for a weapon and he also searched for any evidence relating to this charge, including the original $10,000 note on which the charge was based. The prosecuting attorney had told the officer to be on the lookout for this note and any other relevant evidence. After searching defendant's person, the two officers opened the briefcase and took out and briefly examined the contents. They then took the defendant to the police station for booking, taking the briefcase with them. Thereafter, they went to the office of the prosecuting attorney, where the contents of the briefcase were more thoroughly examined by the prosecutor and Officer Craig. This was done in the presence of the defendant and an attorney representing him. Certain of the contents of the briefcase were retained by the State and a receipt therefor was given to defendant.

Included in the papers found in the briefcase were what purported to be six promissory notes from Bud Perry to the defendant. One was the previously mentioned note for $10,000 which defendant had exhibited to the prosecuting attorney the preceding day. In addition, there were five other notes, all of which had been written on the other blank invoice forms on which Bud Perry had signed his name on October 29, 1965. Above his signature on these other five sheets were notes dated September 1, 1965, for $5,000; October 1, 1965, for $5,000; November 15, 1965, for $1,850; November 16, 1965, for $5,000, and November 17, 1965, for $4,000. The notes all contained the same provisions with respect to maturity, interest and attorney's fees as were contained in the $10,000 note.

Bud Perry testified that he was not indebted to the defendant at all and had not authorized him to write promissory notes

2. The note was dated March 1, 1965, at Springfield, Missouri, was due on demand, and if no demand was made, then on December 1, 1965. It provided for 8% interest and an attorney's fee of 20%.

above his signature on these six sheets. Rather, defendant had been authorized to fill out bills of sale for clocks in Kansas City and was to return a copy of each to Perry.

All six of these purported promissory notes were offered and received in evidence. In addition, another paper taken from the briefcase was received in evidence. It was a printed note form, the front of which had been filled out as a note to Bud Perry for $5,000, dated October 29, 1965, and due on demand. On the back was the signature of Bud Perry, and above his signature was typed a statement that he acknowledged receipt of the original copy of that note. Perry testified that when he signed his name on the back of this note form, there was nothing filled in on the front of the note form or on the back other than his signature.

We first consider the question of whether defendant's motion for a judgment of acquittal should have been sustained.

■ Defendant takes the position that § 561.011, subd. 1(1) contemplates negotiable instruments only. On that premise, he argues that a violation of the statute was not shown, his reasoning being as follows: The information alleges the making of the instrument in question between October 29 and December 14, 1965, and the proof did not specifically fix the date. Bud Perry simply testified that the paper was blank when he signed it on October 29, and he did not see it again until it was exhibited on December 14, 1965, by the defendant to the prosecuting attorney. Consequently, says defendant, the note could have been made after December 1, 1965, the maturity date fixed in the face of the instrument. Defendant states that as payee he was not a holder in due course, and furthermore that an instrument made or completed after its maturity date would be non-negotiable and would not be an instrument relied upon in ordinary business and commercial transactions. The making of the note after December 1, 1965, would

not, according to defendant's argument, violate the statute, and there was no proof that the making of the note was prior to December 1, 1965.

■ We reject defendant's interpretation of § 561.011, subd. 1(1). The legislature did not use the term "negotiable instrument" in writing that statutory provision. Instead, it refers to "any writing of any kind having legal efficacy or commonly relied upon in business or commercial transactions". That language cannot be said to be limited to negotiable instruments. It might apply, for example, to written contracts. Such writings can have legal efficacy and are commonly relied on in business or commercial transactions. However, we need not undertake to define the outer limits of the terminology used in § 561.011, subd. 1(1). We only need to hold, and we do hold, that the making of the purported note on which this prosecution is based does fall within the terms of the statute.

Defendant's second point with reference to his right to a directed verdict is based on the contention that there was no evidence that the defendant executed or made the $10,000 note with any intent to defraud. In seeking to support that argument, he says that there was no evidence that Bud Perry parted with anything of value because of this $10,000 note, and further that defendant never made any demand on Bud Perry for payment of the note.

■ Section 561.011, subd. 1(1) does not require that the one sought to be defrauded have parted with some consideration as a result of the instrument made by defendant in order to sustain a conviction under the statute. Rather, it is necessary only that there be evidence from which a jury could find that defendant made the instrument with intent to defraud.

■ There was evidence that defendant, by making the note in question, had the requisite intent to defraud. The defendant had obtained the signatures of Bud Perry

on blank pages of paper on the representation that he would fill in bills of sale for clocks above Perry's signatures. Instead, without Perry's knowledge or consent, he filled in six notes of varying amounts, including the $10,000 note on which he was prosecuted. He was carrying these around with him in a briefcase when arrested. When asked the day before about the transactions in October with the Perrys concerning the purchase of antifreeze, for which he had been paid, he countered by producing and exhibiting to the prosecuting attorney the $10,000 note in question, saying that Bud Perry was indebted to him and he intended to sue. The jury certainly could find therefrom that he expressed an intention to rely on the forged note as a defense against the claims of the Perrys resulting from their advances for antifreeze in October and that he was expressing an intention to seek payment of the note from Bud Perry. Such findings would be sufficient basis for the jury to conclude and find that the defendant made the note in question with intent to defraud.

We hold that the trial court properly overruled defendant's motion for a judgment of acquittal.

This leaves only the question of whether the search of defendant's briefcase and the seizure of certain of the contents thereof without a search warrant entitled defendant to have his motion to suppress sustained and the documents obtained in such search excluded from evidence.

■ The arrest of defendant was a lawful arrest. A warrant charging defendant with violation of § 561.011, subd. 1(1) had been issued by the magistrate and was in the possession of the officers when the arrest was made. The officers were entitled to make the arrest based on the warrant in their possession.

■ An officer, incidental to a lawful arrest, may search the person arrested and the premises under his control. State v. Ciarelli, Mo., 416 S.W.2d 944; State v.

Burnett, Mo., 429 S.W.2d 239, decided June 10, 1968; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; Lee v. United States (8th Cir.) 363 F.2d 469.

The search of which defendant complains herein was made immediately following and incident to the lawful arrest of the defendant. The search covered defendant's person and the briefcase which he held in his hand at the time of his arrest. Under the cases above cited, the search was not unreasonable and did not violate either the Fourth or Fifth Amendments to the Constitution of the United States or § 15, Art. I of the Constitution of Missouri, V.A.M.S. It was not necessary, under the facts of this case, for the officers to have a search warrant as a condition to making the search which they in fact made.

■ Defendant cites and relies particularly on Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, but we do not find that case to be controlling. As a matter of fact, the Supreme Court of the United States in the recent case of Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, rejected the distinction made in some earlier cases, including Gouled, between seizure of items of evidential value only and seizure of instrumentalities, fruits, or contraband. Defendant also cites Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, but an examination of that opinion discloses that except for its reference to the "mere evidence" rule of Gouled, supra, it actually supports the propriety of the search made by the officers in this case and the admissibility of the documents which were found in defendant's briefcase. Of course, the statement in Abel about seizing "mere evidence" is not now to be followed as a result of the decision in Warden, Maryland Penitentiary v. Hayden, supra.

Finally, defendant cites State v. Edmondson, Mo., 379 S.W.2d 486, as authority for

the proposition that his motion to suppress should have been sustained. That case, however, is not similar or relevant. It dealt with a search made at a later time and a different place than the one where the arrest was made, and held that the search was not justifiable as incident to the arrest. Edmondson has no application to the case here involved.

We hold that in overruling the motion to suppress and in admitting the various notes in evidence the court ruled correctly.

We have examined the record as required by Rule 28.02, V.A.M.R., and find no error.

The judgment is affirmed.

All of the Judges concur.

