**STATE of Missouri, Respondent,**

v.

**Eddie BRUNSON, Appellant.**

**No. KCD 27091.**

Missouri Court of Appeals, Kansas City District.

Dec. 2, 1974.

Willard B. Bunch, Public Defender, Sixteen Judicial Circuit, James W. Fletcher, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant Eddie Brunson, who was tried in the Circuit Court of Jackson County, was found guilty by a jury of the crime of burglary, second degree (Section 560.-045, RSMo 1969, V.A.M.S., and, in view of the jury's inability to agree on his pun-

ishment, was sentenced by the court to three years confinement in the Department of Corrections. On appeal defendant assails the guilty verdict and imposed sentence on the single ground "that the evidence was not sufficient to sustain a judgment of conviction since there was no evidence that the defendant broke into the dwelling house as charged."

■ Elements of the statutorily proscribed offense of burglary, second degree, Section 560.045, supra, are breaking and entering a dwelling house with intent to commit a felony or steal therein. State v. Sallee, 436 S.W.2d 246 (Mo.1969); State v. Tallie, 380 S.W.2d 425 (Mo.1964), and State v. Bussard, 494 S.W.2d 401 (Mo. App.1973). Defendant's explicit assertion of error questions only the sufficiency of the evidence to prove that he broke into the dwelling house of one Charles H. Stickney.

■ Resolution of defendant's appeal compels a review of the evidence in the light most favorable to the state, considering as true all evidence (whether circumstantial or direct in nature) and reasonable inferences favorable to the state and disregarding all evidence and inferences unfavorable to the state. State v. Chase, 444 S.W.2d 398 (Mo.banc 1969); State v. Strong, 339 S.W.2d 759 (Mo.1960); State v. Bruton, 383 S.W.2d 525 (Mo. 1964), and State v. Colthorp, 437 S.W. 2d 75 (Mo.1969). Conjunctively, it was the province of the jury to weigh and evaluate the evidence and to make the crucial determination of whether the evidence proved beyond a reasonable doubt that defendant broke into the dwelling house in question, the only aspect of the charged offense whose proof he challenges; perforce, this court's duty on appeal regarding defendant's assailment of the guilty verdict is limited to determining whether there was sufficient substantial evidence to support the jury's implicit finding that defendant broke into the dwelling house in question. State v. Strong, 484 S.W.2d 657 (Mo.

1972); State v. Crawley, 478 S.W.2d 344 (Mo.1972), and State v. Odom, 353 S.W.2d 708 (Mo.1962).

The following facts introduced and relied on by the state are commensurable with the above principles. Charles H. Stickney testified that on March 22, 1973, he was owner and sole occupant of a residential dwelling located at 2204 E. Gregory Blvd., Kansas City, Missouri. He left for work that day at about 6:30 A.M. Prior to leaving he locked and secured the doors of his home and no one had permission to enter. The front door was locked by means of "a night lock"—when it was shut "it automatically locked". The front door of his home had three glass panels in it. Later, in response to a telephone call, he returned to his home and observed that one of the glass panels in his front door, the one nearest to the doorknob, was broken and there was glass scattered in the front room of his home just inside the front door and on the front porch of his home just outside the front door. Inside his home he also observed an open dresser drawer which had not been left open by him. A white scarf or shawl, which was identified and admitted into evidence as State's Exhibit One, which had been found by the police on his front porch, did not belong to him.

Beverly Ann Johnson testified that she was a neighbor of Stickney's, living across the street and one house west of him at 2201 E. Gregory Blvd. At approximately 9:30 A.M., on March 22, 1973, she observed two men walk up the sidewalk in front of her home and then cross the street and go upon the glassed-in front porch of Stickney's home without knocking. The two men were alone. She then observed the two men walking from one end of the porch to the other peering into the house through the glass door panels and two front windows. She next observed the two men on the porch of the Stickney home exchange some pieces of cloth or clothing, one of which was white. Becoming suspicious, she terminated her observation of

the two men and proceeded to go to her phone and call the police. After calling the police she returned to her observation post inside her home and the two men previously observed on Stickney's front porch were no longer in sight. She did not see either of the two men enter the Stickney house. The police arrived within fifteen minutes after she placed her call and shortly thereafter she observed a policeman come out of the Stickney house with one of the men she had previously observed on the front porch.

Mary Potts testified that she too was a neighbor of Charles Stickney, living next door, east, at 2200 E. Gregory Blvd. At approximately 9:30 A.M., on March 22, 1973, she observed two men go "up on the sidewalk" and onto the front porch of the Stickney house. The location of her house with respect to the Stickney house prevented her from seeing what the two men did, if anything, on the front porch. Failure of the two men to leave aroused her suspicion and she too called the police. Later, she saw a policeman take one of the two men she had observed from the Stickney house and "put him in the paddy wagon".

Paul Bohannon, one of several policemen responding to one or both of the previously mentioned telephone calls, testified that as he approached the front of the Stickney house he observed that one of the glass panels in the front door was broken and the door was standing slightly ajar. He also testified that there was a "slight amount" of glass on the front porch floor and a white scarf or shawl (State's Exhibit One) on a table on the porch. As he stepped upon the front porch he observed a "shadow-type of movement" inside the house behind the front door. He then ordered whomever was in the house to come out. A person then exited from the Stickney house through the front door and stepped onto the porch. This person was arrested by Bohannon and identified as the defendant.

Dale Trigg, another of several policemen responding to one or both of the previously mentioned telephone calls, testified that when he arrived at the Stickney residence he proceeded toward the backyard but was blocked by a chain link fence. However, at the point his movement was blocked, he observed the rear door of the Stickney residence open and then close. Simultaneously, he saw Robert Harlow, another policeman at the scene, approaching the rear of the Stickney house and told him what he had just observed. Harlow immediately hollered for whomever was inside the Stickney house to come out, and a male, later identified by the name of Richardson, came out of the rear door and was apprehended and arrested by Officer Harlow. Trigg then proceeded to the front of the Stickney residence where he observed another male, whom he identified as the defendant, in Officer Bohannon's custody. Additionally, Officer Trigg testified that he searched the Stickney residence.

Officer Robert Harlow testified that when he arrived at the scene he observed Officer Bohannon "standing in the front" of the Stickney residence, with a drawn revolver, and another male, whom he identified as the defendant, coming out of the front door of the Stickney residence with his hands up. Harlow then proceeded to the rear of the Stickney residence and his actions there leading up to the apprehension and arrest of the other male identified as Richardson paralleled that previously testified to by Officer Trigg.

■ Proof of defendant's criminal agency, whether acting alone or in concert with Richardson, in breaking the glass panel in the front door of the Stickney residence and thereby effecting a means of entry, was not relegated to direct evidence, but was equally susceptible of proof by circumstantial evidence. State v. Kenney, 101 Mo. 160, 14 S.W. 187 (1890); State v. Chase, supra, and State v. Brewer, 325 S. W.2d 16 (Mo.1959).

Defendant admits in the argument portion of his brief that the broken glass panel in the front door and his physical presence inside the house "at first blush appear highly incriminating". But the color soon subsided from his blushing admission because in the next breath he thereafter adamantly argued that when the two admitted facts were set aside the state's case proved only that he was "present at the scene of the alleged crime" and stood devoid of any evidence that he gained entry by breaking into Stickney's residence.

As more fully gleaned from fragmented portions of defendant's argument, the conceptual basis of his argument is that proof of the essential elements of a criminal offense by circumstantial evidence alone has peripheral limitations, which, if exceeded, relegate the ostensible proof to the realm of mere possibility, sheer surmise and unbridled conjecture, which falls short of proof beyond a reasonable doubt to which our system of criminal justice is rightfully and irrevocably committed and thereby violates the hallowed presumption of innocence which clothes each and every criminal accused. The conceptual basis of defendant's argument can not be faulted—but it may be said with equal positiveness, as hereinafter demonstrated, that the state's case was replete with circumstantial evidence which did not exceed legally recognized peripheral limitations and which was more than adequate to prove that defendant broke into the Stickney residence.

■■ The long established rule prevailing in this state regarding the adequacy of circumstantial evidence to prove the essential elements of a criminal offense, and peripheral limitations attached thereto, is anciently rooted in State v. Hill, 65 Mo. 84 (1877) and asserted with positive clarity in State v. Ramsey, 368 S.W.2d 413, 416 (Mo.1963), wherein the court stated that when the state's case rests upon circumstantial evidence "the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his

innocence and exclude every reasonable hypothesis of his innocence." Citing State v. Odum, 351 S.W.2d 10 (Mo.1961), and State v. Murphy, 356 Mo. 110, 201 S.W.2d 280 (banc 1947). State v. Thomas, 452 S.W.2d 160, 162 (Mo.1970), with equal clarity, properly cautions that the circumstantial evidence rule in criminal cases should not be unduly distorted in its application: "In a case involving circumstantial evidence *the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence[;]* . . . *the mere existence of other possible hypothesis is not enough to remove the case from the jury.*" (Emphasis added.) See also State v. Taylor, 445 S.W.2d 282 (Mo.1969) The aforementioned may be equated with the burden imposed on the state to prove guilt beyond a reasonable doubt. Just as the burden of proof resting upon the state does not require proof beyond *all doubt,* under the circumstantial evidence rule the circumstances relied on "need not be absolutely conclusive of guilt" and "need not demonstrate impossibility of innocence".

■ Turning once again to the evidence relied on by the state, the following facts warrant special emphasis: (1) Charles H. Stickney locked and secured the door to his home before leaving for work; (2) no one had permission to enter his home; (3) two neighbors observed defendant and a person identified as Richardson go on to the front porch of the Stickney home; (4) one of the neighbors further observed defendant and Richardson peering into the Stickney home through the glass panels in the front door and the two front windows; (5) the glass panel on the front door next to the doorknob was broken and the front door was standing slightly ajar when the police arrived; (6) there was broken glass on the floor of the front porch and on the floor of the front room of the house near the front door; (7) a policeman called to the scene observed a shadow-type movement inside the house behind the front door and ordered whomever was in the house to

come out, whereupon a person, later identified as the defendant, came out of the Stickney house and was placed under arrest; (8) a person identified as Richardson emerged from the back of the house and was arrested; and (9) the police found only the defendant and Richardson inside the Stickney house. The facts just related, and the reasonable inferences to be drawn therefrom, (1) are consistent with each other, (2) are consistent with the hypothesis that defendant, acting in concert with Richardson, broke into the Stickney home, (3) are inconsistent with defendant's alleged innocence, and (4) they exclude every *reasonable* hypothesis of defendant's innocence. In short, the facts related, and the reasonable inferences to be drawn, fully comported with the circumstantial evidence rule prevailing in this state, and, if believed by the jury, not only constituted substantial substantive evidence that defendant broke into the Stickney home, but substantial substantive evidence of magnum persuasive force, and fully met the burden borne by the state of proof beyond a reasonable doubt. The propriety of such a conclusion is illustrated by People v. Fitch, 73 Cal.App.2d 825, 167 P.2d 211 (1946), a burglary case resting on circumstantial evidence and involving substantially similar facts, where the court held "[t]he defendant's presence in the restaurant, with the window broken and the door open, supports the trial judge's conclusion that defendant forcibly broke and entered the premises."

A brief reference is made to certain evidence introduced by defendant and the posture he emphasizes should be given to it. Defendant testified that Richardson came by his home and invited him to a "hooky" party that was going to be held at 2204 E. Gregory Blvd. Richardson was accompanied by an unidentified woman when the invitation was extended to defendant. After receiving the invitation, defendant proceeded alone and on foot to 2204 E. Gregory Blvd. As he approached the front door of the Stickney residence he noticed that it was open. He entered the residence and found Richardson and the unidentified woman inside. Shortly thereafter, the police arrived and ordered him outside and placed him under arrest. The last time he saw the unidentified woman she was inside the house and as far as he was concerned she just disappeared. Defendant also testified that he had been convicted of a previous felony, "burglary and stealing". Defendant also called Officer Kun, a member of the Kansas City Police Department, who testified that he had interrogated defendant at the scene. Statements made by defendant to Officer Kun at the scene, as testified to by Officer Kun, were consistent with defendant's trial testimony.

Defendant, with a mixture of adroitness and sublety, argues that his presence inside the Stickney residence "was quite plausibly explained" by his own testimony. The adroit and subtle nature of defendant's argument is illuminated by a glaring fallacy. It was the jury's prerogative to disbelieve defendant's testimony and obviously it did so. State v. Rose, 325 S. W.2d 485, 487 (Mo.1959), and State v. Turnbough, 497 S.W.2d 856 (Mo.App. 1973).

The state's evidence in this case, marked with pellucidity, was adequate and sufficient to permit the jury to find beyond a reasonable doubt, as it obviously did, that defendant broke into the dwelling house in question.

Since the evidence in this case supported submissibility of the offense for which defendant stood charged in all respects, and a review of the record reveals no error, the judgment is affirmed.

All concur.