**STATE of Missouri, Plaintiff-Respondent,**

v.

**Joseph B. GAMACHE, Defendant-Appellant.**

**No. 35441.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Jan. 7, 1975.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 7, 1975.

John C. Danforth, Atty. Gen., Preston Dean, Paul Robert Otto, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Mark A. Brown, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

Charles W. Bobinette, Legal Aid Society of St. Louis, St. Louis, for defendant-appellant.

SIMEONE, Presiding Judge.

Defendant-appellant, Joseph Byron Gamache, was charged, tried and found guilty by a jury of robbery in the first degree by means of a dangerous and deadly weapon,[1] and sentenced by the court to fifteen years in the department of corrections. After an unavailing motion for new trial, he appeals. We affirm.

Since one of the critical issues raised relates to the sufficiency of the evidence, we shall review the evidence in the light most favorable to the State.

On the evening of October 6, 1972, a dark and rainy night, the Kohne's Tom-Boy Market owned by Mr. Albert Kohne and located at 4507 Morganford Avenue in the City of St. Louis, was robbed of some $260.00. Several of Mr. Kohne's young-adult children were working in the store that evening for their father. Jean Kohne, age twenty, was working at the cash register with her sister Diane, and nearby were their young brother Steve and a customer. At about 7:40 p. m. a man entered wearing a stocking mask, a light trench coat draped over his shoulders and carrying a sawed-off shot gun.

At the time Mr. Albert Kohne and his son Larry were working at the meat counter. The man pointed the gun in the direction of Jean and Diane and asked Jean to "give him all the money," and "put it in a bag for him." She opened the register and proceeded to get the money, put it in a paper bag and handed it to him. The money consisted of bills, coins and a number of rolls of coins. One of the rolls of coins (pennies) had the name of a customer "Sandra Corn" written on it. Sandra Corn had cashed in the pennies sometime prior to this incident. During the incident, the man, later identified by numerous witnesses as Arthur Meinelt, told Mr. Kohne and Larry to "stand still" because, " 'I have a gun on these girls' or something like that." After handing him the money, the

girls were told to turn around and face the other way. Meinelt then left the store. He was in the store about three to five minutes. Mr. Kohne looked out of the store and saw the man cross Morganford and walk north to Taft Avenue. Mr. Kohne followed the man; the man turned right on Taft Avenue, went down about three car lengths, got into a parked car on the passenger's side, and "as soon as he got in the car and took off it let out a big cloud of smoke." The getaway car was a "low-slung two-toned car, white top and red body" with bucket seats and a console between them.

Larry Kohne called the police and within five minutes or so the police came to the market. Patrolman Louis Bierle came to the store at about 7:45 p. m., spoke to the witnesses and made a report on the robbery. He put out a description of the person wanted for the offense and spoke to at least one customer. On cross-examination by defense counsel, the officer was asked, "Did you talk to Orlanda Duitz?" He replied he could have.

Meanwhile Officer Robert Meyers, alone in a patrol car, had received a description of the automobile involved and stationed himself at the corner of Grand and Delor Avenues. He received the description about 7:45 p. m. on the night of the robbery. He first saw the automobile two toned, red and white 1963 Thunderbird at about 7:48 p. m., driving east on Delor just a short distance west of Grand. The car turned right to go south on Grand Avenue, went to Holly Hills and turned left. The officer turned on his "red-light"; the driver and occupant looked back, continued on at a moderate speed for several blocks and increased its speed. According to Officer Meyers' testimony, "I turned on my siren" and stopped the car at Virginia Avenue and Holly Hills. Inside the car were Arthur Meinelt and defendant, Joseph Gamache. Gamache was in the driver's seat and Meinelt was in the right front (pas-

---

1. Sections 560.120, 560.135, RSMo 1969, V.A.M.S.

senger's seat). Meyers placed the two under arrest. Inside the car he found a tan all-weather coat, several rolls of coins on the rear floor, a stocking mask in the coat pocket, rolls of coins and .410 gauge shotgun shells. In Meinelt's pocket there was an address book containing the address "4507 Morganford" and currency in his wallet.

On cross-examination, Officer Meyers was asked whether a police report was made to which he gave an affirmative answer. Officer Blerle prepared the report and Officer Meyers read it. Officer Meyers, on cross-examination, indicated that "when the siren was put on the car pulled over." Counsel for defendant inquired whether or not the use of a siren was included in the police report. After an objection, the court provided defense counsel with a copy of the report and told counsel that "if you are going to use this report, we are going to use it in its entirety." "You can use the whole police report for any purpose you want. You can read it from the front to back . . . But I am not going to let you pick out one unfavorable portion of it and highlight it. . . ." Counsel replied he wanted to show "one inconsistent statement. It is my understanding that the siren was not used. . . ." The court then indicated, "[Y]ou're talking about negative evidence . . . You can use this whole report for any purpose that you want but when you put this report in evidence the State can put it in evidence. Now do you want it?" Defense counsel then stated, "I certainly do not care to use the entire report."

The two-tone "white top and red body" Thunderbird was owned by Arthur Meinelt's cousin, Robert Downard, sometimes referred to as Thad. Mr. Downard had known Joseph Gamache for some time and had loaned the car to Meinelt and Gamache numerous times. At about noon on October 6, 1972, Downard gave the keys to the Thunderbird to Gamache, and Gamache and Meinelt drove it away. He last saw them on October 6, "around noon."

Downard testified that the car would burn oil "when you take off fast."

After the arrest the automobile was taken to a lot where two days later Downard recovered his automobile. When he did so, he noticed that there was a shotgun in it, inside the dash where the radio should be. He informed the police. It was the shotgun identified by witnesses as the one used in the robbery.

In due time and on October 26, 1972, the defendant-Gamache was charged with robbery. Several witnesses were endorsed on the information; several pre-trial motions were filed. One of the pre-trial motions —a motion for bill of particulars—requested the "name and present address of each and every person who was present at the scene of the alleged crime." This part of the motion was sustained. Then on January 15, 1973, defendant filed a "Motion to Inspect." Paragraph d of this motion requested the "names, addresses and pseudonyms of all persons interrogated by the aforesaid law enforcement agencies in connection with the criminal investigation of the aforementioned criminal charges whether or not the State considers them as witnesses on behalf of the State so that said persons may be interviewed by the defense." This part of the motion to inspect was overruled prior to trial.

Trial began on May 2, 1973. During the voir dire examination defense counsel asked the panel, "Is there anyone who would feel that if the State were to bring forward nine witnesses as they indicate they will and the defendant, Mr. Gamache . . . decides not to take the stand . . . [would you feel he] would be hiding something from you?" Three jurors indicated they would. No motion to strike for cause was made (counsel said, "I held my tongue"), and no motion for mistrial was made at this time, although five other persons were stricken for cause for other reasons. Defense counsel used his peremptory challenges to strike these three names. After the peremptory challenges were made, and the strikes were made tak-

ing these three persons off the panel, counsel for defendant stated, "I am simply making a record" and, "I ask for a mistrial." [2]

At the conclusion of the State's case defendant moved for a judgment of acquittal. Rule 26.10, V.A.M.R.

During the defendant's case, several witnesses including Gamache testified. Gamache's sister, Constance Hunt, testified that Gamache and Meinelt were with her from 5:00 p. m. until 7:30 p. m. on October 6. She worked at a drug store with Helen "Boyd" (Boyer?). Constance testified that Gamache and Meinelt picked up Helen Boyd (?) and her at their place of employment at 5:00 p. m. in her Buick automobile. In the car were two other girls. About 6:30 p. m. they picked up Denise Courtway when she finished work and they took the two girls home and went to "Thad's" house. Thad is Robert Downard who lives in Affton. Denise Courtway testified that she was picked up by Gamache and Meinelt with her aunt, Helen Boyer (Boyd?). Helen Boyer testified that Meinelt and Gamache were dropped off at *a* house about 7:30 p. m.

Gamache took the stand in his own defense. He denied participating in the robbery and stated that he picked up his sister Constance at about 5:00 p. m. and eventually he and Meinelt went to Thad Downard's house to borrow his car. This was about 7:30 p. m. He did not recall seeing Downard, but obtained the keys from his wife. Gamache was at Thad's house maybe "ten or fifteen minutes" and then left. He took Thad's Thunderbird (red bottom with a white vinyl top) and drove to the Granada Pharmacy on Gravois Avenue to get some film. He double parked in front of the pharmacy, left the keys in the car with the motor running, and went in to buy some Polaroid film. He did not buy the film because he did not have any money, having left it in the car. He first realized that when he was in the drug store. When he went outside, the car was gone and he waited for "Butch" [Meinelt] to return. He waited in front of the store about five–ten minutes and then saw the Thunderbird return. He got in on the driver's side, and Meinelt slid over into the passenger's side. They started to go to his sister's house when they were stopped by Officer Meyers.

During the defendant's case counsel for defendant called two employees of the Granada Pharmacy—John Payne and Patricia Anderson. Payne was asked whether he had ever seen Mr. Gamache before, and he replied, "I think I might have seen him in the store at one time"—some six or seven months ago. He could not remember the day he saw him. The State objected to any further testimony because it would be irrelevant. The objection was sustained. The witness Payne could not state that Gamache was in the store on October 6, and counsel in his offer of proof suggested that there was a possibility "that it was the date."

Similarly, Patricia Anderson could not indicate on what day she might have seen Gamache, so defense counsel discontinued his questioning.

On rebuttal the State called "ORLANE DEUTSCH." [3] She testified that upon returning home that evening at about 7:30–7:40 p. m. walking on Taft Avenue, she saw a car facing east with its motor running with a male seated in the driver's seat. The car was one with a red body and white top. She also saw a man running wearing a trench coat and saw Mr. Kohne.

2. The court said, "Is there anything that this court could have done that I did not do under those circumstances? I can only act upon your request. All right. Now what do you want me to do now?" Counsel requested a mistrial which was overruled.

3. She testified her name was Elaine Deutsch; counsel for defendant during the cross-examination of Officer Blerle asked if he had talked to "Orlanda Duitz."

At the close of the whole case, defendant renewed his motion for acquittal; this was overruled. The jury was instructed and closing arguments were made.

During the State's closing argument the circuit attorney stated that defense counsel "makes a big point about the time. Whenever a call is put out over a police radio and recorded the time is put down. . . At the time of the crime it is recorded at 7:43." Defense counsel objected because there is no testimony as to whether or not these times were referred to by the police officers. Then the prosecutor further stated that the officers testified that they referred to their police report and that the police report "records the time as 7:43. . . ." Defense counsel then objected because there is no introduction of the police report.[4]

On this appeal, defendant contends the court erred in (1) "failing to strike for cause or in the alternative to declare a mistrial, those jurors who opinioned [sic] that they would draw a negative inference if defendant failed to testify causing defendant to use his peremptory challenges"; (2) overruling defendant's motion for acquittal at the close of all the evidence;[5] (3) "limiting the cross-examination of Patrolman Meyers as to his prior inconsistent statement and in prohibiting appellant to present direct evidence of his prior inconsistent statements" [sic]; (4) sustaining the State's objection to the relevancy of the testimony of John Payne as to the identification of the defendant and to the type of goods sold; (5) denying defendant's motion to "inspect the names and addresses of persons interviewed [interrogated?] and then allowing the State to call an undisclosed witness to give evidence outside the scope of rebuttal"; and (6)

overruling defendant's objection to the State's improper and prejudicial references during closing arguments to matters which were not in evidence.

The crucial issues as we view them are (1) whether a submissible case was made, (2) whether the court erred in denying defendant's motion to obtain the names, addresses and pseudonyms of all persons interrogated by law enforcement agencies whether or not the State considers them as witnesses and (3) whether the court erred in failing to declare a mistrial when certain jurors indicated they would draw a negative inference if the defendant failed to take the stand.

■ In determining the issue as to whether a submissible case was made, we must view the evidence most favorably to the State, and consider the favorable inferences reasonably to be drawn therefrom and evidence to the contrary is to be rejected. Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence is sufficient to make a submissible case. State v. Lee, 404 S.W.2d 740, 746–747 (Mo.1966). If there is substantial evidence to support the finding of the jury, it will not be disturbed on appeal. State v. Kemp, 234 Mo.App. 827, 137 S.W.2d 638, 641 (1940). We are also governed by other general principles. All persons who participate in the commission of an offense are principals and the act of one is the act of all; all persons who act together with a common intent and purpose are equally responsible therefor, and a person who aids and abets the commission of a criminal offense is guilty as a principal. Evidence sufficient to justify the jury in finding that the defendant did in any way aid, abet or encourage another in the commission of

4. In his brief defendant objected to another part of the argument, but in argument before this court, counsel indicated he was not complaining about that part referred to in the brief.

5. He contends that the "possession by the defendant of the fruits and instruments of the

crime was insufficient to support an inference" of guilt because defendant's possession was not exclusive, was not knowing or conscious, nor does the evidence support an inference that he aided and abetted the robbery.

an offense is sufficient to support a conviction. Furthermore, while evidence that an accused had an opportunity to commit an offense which merely raises a suspicion is insufficient to sustain a conviction, yet any evidence showing any form of affirmative participation is sufficient. Proof of conduct before, during or after the offense are circumstances from which participation in the offense may be inferred. Of course, a submissible case may be made on circumstantial evidence. But to warrant a conviction based on such evidence the facts and circumstances must (a) be consistent with each other, (b) be consistent with the hypothesis of guilt (c) be inconsistent with innocence, and (d) point clearly to guilt as to exclude every reasonable hypothesis of innocence. State v. Odum, 351 S.W.2d 10, 14 (Mo.1961); State v. Cain, 507 S.W.2d 437, 440–441 (Mo.App.1974); State v. Maxie, 513 S.W.2d 338, 343 (Mo.1974).

■ Tested therefore by these legal principles, we are convinced that a submissible case was made and the court did not err in overruling defendant's motions for judgment of acquittal. In examining the evidence favorable to the State, Gamache and Meinelt borrowed the Thunderbird from Downard earlier than 7:30 p. m., a robbery occurred at 7:40 p. m., Meinelt was identified by numerous witnesses, Gamache was arrested at about 7:48 p. m. by Officer Meyers, the robbery having occurred at 7:40 p. m. It was a matter of minutes from the time of the robbery to the time that Gamache and Meinelt were arrested, with Gamache driving the red-white Thunderbird. The defendant's testimony that he borrowed the car at 7:30 p. m., stayed at Downard's house 10–15 minutes, drove to the Granada Pharmacy, double parked, went inside, waited 5–10 minutes for Meinelt to return, is inconsistent with the other evidence. The car was parked on Taft, Meinelt got into the passenger's seat, the car drove away and left

a big cloud of smoke (a characteristic of the car as described by the owner). Many of the items used in the robbery or which were the fruits of same were found inside the car. There is sufficient evidence to submit whether the defendant participated in the offense; hence we hold the court did not err in overruling the motion for judgment of acquittal.[6] The authorities relied upon by the appellant are not dispositive of this cause. Evidence used in the robbery or which were the fruits of the same were found inside the automobile which defendant was driving and this is an additional circumstance under these facts to submit the case. State v. Cobb, 444 S. W.2d 408, 414 (Mo. banc 1969); State v. Miller, 485 S.W.2d 435, 439–440 (Mo.1972).

■ Next, defendant contends that the court erred in denying the defendant's motion to obtain the names and addresses of all persons interrogated by law enforcement agencies and in allowing the State to call an unendorsed witness, Elaine Deutsch, in rebuttal because her testimony was outside the scope of rebuttal and because he was denied the opportunity to interview Mrs. Deutsch prior to trial. But this contention in the context of this proceeding is without merit. First, prior to trial, the defendant moved for the names and addresses of the persons present at the scene of the offense, and this motion was granted. Second, a similar request was made in State v. Swiggart, 458 S.W.2d 251, 252–253 (Mo.1970), requesting "a list of witnesses and their statements known to the State to have knowledge of the cause favorable to the defense," and "the names of all persons, other than those endorsed . . . as witnesses . . . ." The Supreme Court held that there is no requirement for the prosecutor to divulge information in the State's files on the prospect that something might be found which might or might not prove to be helpful. See also State v. Reynolds, 422 S.W.2d

---

**6.** In a case involving circumstantial evidence, the circumstances need not be absolutely conclusive of guilt and they need not demonstrate impossibility of innocence. State v. Maxie, supra, 513 S.W.2d at 343.

278, 280–281 (Mo.1967). Third, defense counsel was familiar with the name of Orlanda Duitz, or Orlane Deutsch or Elaine Deutsch because on cross-examination of Officer Blerle counsel referred to her.

Neither do we believe that the court erred in permitting Mrs. Deutsch to testify in rebuttal although not endorsed. Although names of material witnesses are to be endorsed, Rule 24.17, it is unnecessary to endorse rebuttal witnesses. State v. Payne, 342 S.W.2d 950, 954 (Mo.1961); State v. Peel, 469 S.W.2d 33, 36 (Mo.1971). The scope of rebuttal testimony is largely within the sound discretion of the trial court whose ruling will not be reversed in the absence of an abuse of discretion which prejudices the defendant, even though the evidence is not entirely rebuttal. State v. Washington, 383 S.W.2d 518, 524 (Mo.1964). Mrs. Deutsch's testimony tended to contradict and disprove defendant's testimony. We find no abuse of the trial court in permitting this testimony.

Next, the court did not err in failing to declare a mistrial when certain jurors indicated they would draw a negative inference if the defendant failed to take the stand. No motion to strike was made at the time; counsel "held his tongue"; the court was not asked to do anything. It was only after the peremptory challenges were made that counsel requested the court to declare a mistrial because he was "simply making a record." A mistrial is a drastic remedy and we will not interfere unless there is an abuse of discretion. In this context the trial court not being requested to act until too late cannot be error. A trial court is under no duty to strike any venireman on its own motion. State v. Overby, 432 S.W.2d 277, 279 (Mo.1968).

Finally, we have reviewed the remaining assignments: (1) limiting Officer Meyers' cross-examination as to the fact he sounded his siren and in prohibiting the use of the police report to show no siren was sounded without permitting the use of the whole report;[7] (2) sustaining the State's objection to the relevancy of the testimony of John Payne, who could not testify when he thought he may have seen Gamache in the Granada Pharmacy[8] and (3) overruling the objection to the prosecutor's closing argument[9] and find them to be without substantial merit. The court did not err in its rulings or the matter was wholly within its discretion.

We have reviewed the entire record in this cause, read the lengthy briefs of the parties, examined the appropriate authorities and are convinced that no error occurred, and we therefore affirm the judgment.

The judgment of conviction is affirmed.

McMILLIAN and GUNN, JJ., concur.

7. When one party intends to use a portion of a document, the other party may use other portions. The court did not err in restricting the cross-examination as to Officer Meyers on the basis that Meyers' testimony conflicted with what Blerle included in or omitted from the report. State v. Williams, 473 S.W.2d 388, 390 (Mo.1971).

8. See State v. Walden, 490 S.W.2d 391, 393 (Mo.App.1973).

9. The argument was within the reasonable inferences of the record. The trial court has wide discretion in determining the latitude in permitting argument of counsel. State v. Taylor, 508 S.W.2d 506, 514 (Mo.App.1974).