**STATE of Missouri, Plaintiff-Respondent,**

v.

**Raymond COX, Defendant-Appellant.**

**No. 36686.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Sept. 2, 1975.

---

Thomas J. Nold, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Timothy J. Verhagen, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

Defendant-appellant, Raymond Cox, was charged, tried and found guilty by a jury of the offense of burglary, second degree. § 560.045, RSMo 1969. In accordance with the jury verdict, the court, after overruling appellant's motion for new trial, granting allocution and finding him to be a second offender, sentenced him to ten years in the department of corrections. He appeals. We affirm.

On this appeal, defendant-appellant raises two points: (1) "The trial court erred in denying defendant's motion for judgment of acquittal at the close of all the evidence, because the evidence adduced failed to

prove the necessary element of an intent to steal," and (2) "[t]he trial court erred in overruling the defendant's objection to the admissibility [sic] of . . . the defendant's bib overalls [because they] had little probative value and had a highly prejudicial effect on the jury."

Appellant's first point is that the evidence is insufficient to make a submissible case. Resolution of the defendant's appeal compels us to review the evidence in the light most favorable to the state considering as true all the evidence favorable to the state, direct and circumstantial, and all reasonable inferences deducible therefrom, and we disregard all evidence and inferences unfavorable to the state. Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence favorable to the state is sufficient to make a submissible case. *State v. Cain,* 507 S.W.2d 437, 438 (Mo.App. 1974); see also *State v. Brunson,* 516 S.W.2d 799, 801 (Mo.App.1974).

At the time of the alleged burglary, July 17, 1974, Mr. John Neal owned a two-story house in the 1300 block of Warren Avenue in the City of St. Louis. He lived in the upstairs portion of the house (1307a Warren) with four of his children. His stepdaughter also lived in the upstairs portion in another "apartment." To get to the Neal living quarters it is necessary to pass through a gangway leading to the back of the house and then up a flight of steps to a porch. There are two doors that lead from the porch to Mr. Neal's "apartment." The "one on the side" was permanently nailed shut by Mr. Neal. The door that is always used can only be locked by the use of a hook on the inside. These two doors provide the only means of egress and ingress to the Neal "apartment."

On the morning of July 17, 1974, John Neal left for work at the American Foundry Manufacturing Company at about 7:20 a. m. He left his son Larry, age ten, home alone.[1] Sometime that day, Larry went outside to play with his friend David Kessinger. As he left the apartment, he shut the door behind him. Later in the day, the two boys started to go back into the Neal apartment. From the porch Larry saw a man "looking out" the kitchen window. David entered the apartment. The man did not talk to Larry, but Larry stated that "[h]e asked my friend did he want to use the bathroom." Both boys then ran. Larry "ran" down the stairs and to the American Foundry to get his father.[2] He told his father that he saw somebody in the house. Mr. Neal and Larry then returned to the house. Mr. Neal started to enter the house but saw a bag with "blue clothes in it" sitting by the door and decided "I better not go in, and I better go down and call the police. And I called the police." Mr. Neal and Larry then waited outside for the police to arrive.

At about 4:16 p. m., Police Officer Kurt Shrum and his partner, Harold Nester, received a radio call to proceed to 1307a Warren. When they arrived, they found Mr. Neal and Larry waiting outside. Several other police officers arrived at about the same time.[3] The police then proceeded up

---

**1.** Larry was questioned by the court out of the hearing of the jury. The court found that he understood what it meant to tell the truth, the consequences of lying, the difference between a lie and the truth, and had the intelligence and mental capacity to observe, retain and relate events. The court then ruled that Larry was competent to testify.

**2.** It is unclear from the record how far the foundry is from the Neal house. Mr. Neal testified that it was "[a]bout five blocks."

**3.** It is difficult to determine from the record with any degree of certainty the time interval between Larry's discovery of the man in the apartment and the arrival of the police. Larry testified that it took about ten minutes for him to run to the foundry. He had to talk to two people before he saw his father and reported seeing a man in the apartment. Mr. Neal remembered this to be at "about 5:30." Mr. Neal testified that it then took him and Larry "I'd say about nine minutes" to get back to the apartment. Mr. Neal then started to enter the apartment but decided to call the police. Neal testified

the steps leading to Neal's apartment. Both doors were secured from the inside. One of the doors "appeared to be opened or forced open in some manner. There were force marks on the door, but I had to reach inside and remove a nail that was secured." Officer Shrum also testified that he found a bent "bracing bit" lying on the porch. The police entered the apartment and found the defendant standing in the kitchen. He had a mustache and was wearing a black nylon jacket and blue bib overalls.

Mr. Neal and Larry followed the police into the apartment. Upon searching the apartment, Mr. Neal discovered that the chest in which he keeps his clothes had been tampered with. The chain lock which secures the chest was broken. It had been secured when he left for work that morning. Mr. Neal also noticed that an extension cord that he kept in a closet next to the chest was missing. A radio that had been on a chair when he left for work was moved to the kitchen table.[4] Nothing else was missing.

Officer Shrum arrested Cox for burglary, handcuffed him, conducted a cursory weapon search and took him to the police station.[5] At the station, the police searched the defendant and took his clothes, except underwear. Officer Shrum noted that the overalls that the defendant was wearing were peculiarly constructed—"inside of each lower pants leg is another piece of material that looks like part of another trouser leg, and it's sown [sic] to the inside. Then there's a shoestring drawn through each, so that when it's on the legs, the inside part can be drawn shut and tied." At trial, out of the hearing of the jury, defendant objected to the introduction of the overalls as being prejudicial and of no probative value. The court overruled the objection, and the overalls were admitted.

Officer Shrum found an electric extension cord in one of the inside lower leg "pockets."[6] He initialed it and placed the department serial number on the plug. Later that evening, one of the officers took the cord to Mr. Neal for identification. Neal identified the cord as the one missing from his closet.[7]

At the close of the state's case, the defendant moved for judgment of acquittal on the ground that the state failed to prove the crime charged. The motion was overruled. The defendant offered no evidence, and at the close of all of the evidence the defendant again moved for judgment of acquittal which was again overruled. The court instructed the jury. The jury returned a verdict of guilty. Thereafter, on October 29, 1974, the court, having found from the evidence and the record that defendant had been convicted of a felony in Missouri, assessed punishment at imprisonment in the department of corrections for a period of ten years.

On November 21, 1974, the court overruled defendant's motion for new trial, and

that the police arrived ten or fifteen minutes later. Officer Shrum testified that he and his partner received the radio call at "[a]bout 4:16 p. m." He further testified that at the time he received the call he was on 14th Street and got to the Neal house in "I'd say less than a minute."

4. There is some testimony to indicate that Larry sometimes plays the radio. However, Mr. Neal testified that the radio was on the chair because it could be plugged in from there. The radio was not plugged in when it was found on the table.

5. There is testimony by Mr. Neal that after they had placed the handcuffs on the defendant he said to Larry something like, "You were the little boy that was sitting at the front." There is further indication that he may have said something "about using the bathroom."

6. Officer Shrum testified that he conducted a cursory search of the defendant for weapons at the scene. He stated that he only "did a pat-down of his upper body" and did not reach along his legs.

7. Mr. Neal had trouble identifying the cord at trial. He testified on one occasion that the cord shown him at trial was not his and not the one the police brought to his house. He noted some differences in the socket. However, on another occasion at trial, Neal indicated that he was not sure if the cord shown him at trial was his.

on the same day, allocution having been granted, the court rendered judgment and pronounced sentence in accordance with the jury verdict.

As stated, defendant contends that the evidence is insufficient to make a submissible case.

■ The state's case is based on both direct and circumstantial evidence. In order to make a submissible case based upon circumstantial evidence, however, the facts and circumstances must (1) be consistent with each other, (2) be consistent with the hypothesis of the guilt of the accused, (3) be inconsistent with innocence, and (4) point so clearly to guilt as to exclude every reasonable hypothesis of innocence. *State v. Cain,* supra, 507 S.W.2d at 441; *State v. Gamache,* 519 S.W.2d 34, 40 (Mo.App.1975).[8]

■ The elements of the offense of burglary second degree are the breaking and entering with the intent to commit a felony or to steal therein. § 560.045; *State v. Little,* 501 S.W.2d 562, 563 (Mo.App. 1973). To constitute a breaking, the force necessary need be no more than the pushing open of a door which has been shut. *State v. Bradley,* 485 S.W.2d 408, 412 (Mo.1972). And it has been said that the opening of an unlocked door constitutes a forcible breaking within the meaning of the second degree burglary statutes. *State v. Fritz,* 379 S.W.2d 589, 590 (Mo.1964).

■ The requisite intent to steal accompanying a charge of burglary can, of course, be proved from the circumstances of the case, and even where no stealing is shown,

the intent to steal may be shown by circumstantial evidence. *State v. Fritz,* supra, 379 S.W.2d at 590; *State v. Faber,* 499 S.W.2d 790, 794 (Mo.1973); *State v. Beckemeyer,* 423 S.W.2d 687, 688 (Mo.1968). Intent is generally not susceptible of direct proof and may therefore be established by the circumstances of the case. *State v. McCreary,* 504 S.W.2d 132, 135 (Mo.App.1973); *State v. Mills,* 495 S.W.2d 715, 716 (Mo.App.1973).

■ Tested by these legal principles, we hold that the evidence when viewed in the light most favorable to the state is sufficient to make a submissible case. We have the following: A man was seen inside the Neal apartment by Neal's son, Larry. Larry had shut the door when he went out to play. When the police arrived, they found both doors to the apartment secured. They found the defendant inside the apartment. One of the doors had "force marks" on it. The lock on Mr. Neal's clothes chest had been tampered with, and his radio had been moved from a chair to the kitchen table. An electric extension cord was missing. The defendant was arrested and taken to the police station for processing. At the station, he was searched. It was discovered there that his overalls had "pockets" sewn on the inside lower legs. Inside one of these "pockets" the police found an electric extension cord which was later that evening identified by Mr. Neal as the one stolen from his apartment.

This evidence is consistent with the state's hypothesis that defendant broke into and entered Neal's apartment intending to

---

**8.** "The long established rule prevailing in this state regarding the adequacy of circumstantial evidence to prove the essential elements of a criminal offense, and peripheral limitations attached thereto, is anciently rooted in *State v. Hill,* 65 Mo. 84 (1877) and asserted with positive clarity in *State v. Ramsey,* 368 S.W.2d 413, 416 (Mo.1963), wherein the court stated that when the state's case rests upon circumstantial evidence 'the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and ex-

clude every reasonable hypothesis of his innocence.' . . . *State v. Thomas,* 452 S.W.2d 160, 162 (Mo.1970), with equal clarity, properly cautions that the circumstantial evidence rule in criminal cases should not be unduly distorted in its application: 'In a case involving circumstantial evidence *the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence[,]* . . . *the mere existence of other possible hypothesis is not enough to remove the case from the jury.'* (Emphasis added.) . . ." *State v. Brunson,* supra, 516 S.W.2d at 803.

steal and is sufficient to submit the issue of guilt to the jury.[9]

Defendant suggests that the testimony concerning his comments to David Kessinger about using the bathroom raises a reasonable hypothesis of innocence. He contends that the facts and circumstances as a whole are not inconsistent with the theory that he entered the apartment with the intent and for the purpose of using the bathroom. However, a close reading of the testimony in this regard indicates that, if anything, the defendant asked David if he [David] wanted to use the bathroom. Mr. Neal testified that, after his arrest, defendant may have made a comment regarding using the bathroom. Defendant posits that when considering the time from which the defendant was first discovered by Larry to the time the police arrived, his presence in the apartment negates any inference of an intention to steal. We find it difficult to determine with any degree of certainty the time between Larry's discovery of the defendant and the police's arrival. However, we note that there is no evidence that the defendant saw Larry at the same time Larry viewed him, nor is there any indication that the defendant had any reason to suspect that someone had gone for help. His only confrontation was with David Kessinger, whom Larry, age ten, referred to as a "little boy." In any event, the longer the time interval involved, the more inconsistent this would be with the theory that he entered the apartment to use the bathroom.

Defendant next contends that the court erred in overruling the objection to the introduction of his "bib overalls" into evidence. He contends that, since it was not shown that they were used in connection with a crime, they were inadmissible, and their introduction into evidence had a highly prejudicial effect in that the jury was permitted to draw an inference from their unique construction that defendant had an intent to steal.

■ The intent with which the defendant entered the Neal apartment is a material matter at issue between the parties. This matter may be proved through the introduction of circumstantial evidence from which the jury can reasonably infer that the defendant possessed the requisite intent to steal. Such circumstantial evidence is relevant and hence will be admitted "if it tends logically to prove or disprove, [or] to support or establish a fact or issue between the parties." *State v. Jenkins,* 516 S.W.2d 522, 525 (Mo.App.1974); *State v. Walden,* 490 S.W.2d 391, 393 (Mo. App.1973). The evidence need not exclude every adverse possibility.

Here, defendant was discovered inside the victim's apartment. He was wearing bib overalls which were found to have secret "pockets" sewn on the inside lower legs. Inside one of these inside "pockets" the police found an electric extension cord which Mr. Neal later that evening identified as the one stolen from his closet. Defendant argues that there is no showing that his overalls were used in the commission of a crime because at trial "[t]he victim stated that the extension cord found in the overalls was not his." This was an issue for the jury to determine. On the day of the robbery, July 17, 1974, Mr. Neal identified the extension cord as the one stolen from

---

9. In *State v. Brunson,* supra, the Kansas City District held that the evidence was sufficient to support a charge of burglary second degree. The evidence showed that the homeowner secured the door; no one had permission to enter; two neighbors saw defendant and another go on the front porch, and one of the neighbors saw defendant peering in; the glass was broken and the door was slightly ajar; a policeman saw a shadow-type movement inside the house and ordered whomever was there out; the defendant came out; a dresser drawer was found open. Under these facts, the court held that the facts and reasonable inferences were sufficient to make a case of circumstantial evidence.

In *State v. Duncan,* 336 Mo. 600, 80 S.W.2d 147, 151 (1935), it is stated that "if any valuable thing is kept or deposited [in a building], the act of breaking and entering the building is burglary."

his apartment. This cord was subsequently initialed by Officer Shrum, and the department serial number was placed on it. Although Mr. Neal did state at one point that the cord shown to him at trial was not the one that the police had brought to his home for identification and was not his, he later indicated at trial that he could not be certain if the cord shown to him at trial was his.

The fact that the overalls were uniquely constructed coupled with the fact that defendant when arrested was in possession of the victim's extension cord provides sufficient evidence from which the jury could reasonably infer that the defendant entered Mr. Neal's apartment with the intention to steal. Defendant cites a number of cases in which demonstrative evidence such as tools or weapons was admitted because relevant to some material issue.[10] Defendant then argues that overalls do not fit the category of tools or weapons.[11] But there is no requirement that relevant evidence be confined to tools or weapons. The unique construction of the overalls was such that the jury could reasonably infer that they were to be utilized in the commission of a burglary with intent to steal. The overalls were relevant and tended to have a bearing on the ultimate fact sought to be established. The charge alleged need not be proved by direct evidence but it may be done entirely by circumstantial evidence. *State v. Stout,* 198 S.W.2d 364, 367 (Mo.App.1946).

▇ We believe that the overalls, uniquely constructed and adaptable for concealment purposes, are relevant to the issue of intent and were properly admitted for the consideration of the jury.

We have read the entire transcript, the briefs and authorities relied upon by the parties and conclude that (1) there was sufficient circumstantial evidence presented to make a submissible case, (2) the facts and reasonable inferences therefrom are consistent with each other, are consistent with the hypothesis that defendant committed the offense charged, and exclude every reasonable hypothesis of innocence, and (3) the court did not err in admitting the overalls into evidence.

Finding no prejudicial error, we affirm the judgment of conviction.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.

---

10. See *State v. Russell,* 324 S.W.2d 727 (Mo. 1959), in which the court admitted into evidence "gloves" and a "crowbar" because they are common tools of burglars; *State v. Johnson,* 361 S.W.2d 662 (Mo.1962), in which the court allowed the introduction of a flashlight, pliers, hammer and large screwdriver into evidence; *State v. Lindner,* 282 S.W.2d 547 (Mo.1955), in which the court allowed into evidence, as relevant to and probative of an intent to steal, two revolvers and two crowbars found in the victim's store.

11. In *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the United States Supreme Court overruled some of its prior contrary rulings and elevated "mere evidence" to the status of instrumentalities, fruits of crime and contraband. In ruling that the seizure and introduction of "mere evidence" does not violate the Fourth Amendment, the Court stated: "Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband." 387 U.S. at 301, 87 S.Ct. at 1647.

Since the *Hayden* decision, "mere evidence" has been accorded equal evidentiary status with instrumentalities, fruits and contraband—subject only to tests of relevancy and materiality. See *State v. Glenn,* 431 S.W.2d 200, 204 (Mo.1968).