**STATE of Missouri, Respondent,**

v.

**Ronald PRINCE, Appellant.**

**No. 44024.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 26, 1982.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
March 19, 1982.

James W. Whitney, Jr., Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for respondent.

REINHARD, Presiding Judge.

Defendant appeals from his conviction, by a jury, of the offense of attempted capital murder, a class B felony. § 564.011 RSMo. 1978. He was sentenced by the court to serve a term of 30 years. We affirm. Defendant's sole contention on appeal concerns the use at trial of a transcript of a tape recording.

The evidence showed that defendant, an insurance salesman, made arrangements with a paid police informant for the infor-

mant to kill defendant's wife. Defendant was the beneficiary of his wife's life insurance policy. After he had given the informant a post-dated check and told him that he wanted her killed that weekend, he was arrested.

The state's case was proved by the testimony of the informant and that of a police officer who, while hiding in the informant's house, overheard the conversation during which defendant gave the informant the check and told him he wanted his wife killed that weekend.

Portions of the conversation between the informant and defendant were recorded. Prior to trial the state moved for permission to use a transcript of the tape recording, for the reason that "the sound on [the recording] is unable to be amplified to a jury so that they could understand it." The court sustained the motion on December 8, 1980, and trial began on December 15. At trial, the informant testified as to the substance of the various conversations with defendant which were recorded. The prosecutor offered the tape, exhibit 23, into evidence and it was admitted without objection. Both parties admit that the tape is of poor quality. The prosecutor then offered the transcript of the tape into evidence. Defense counsel objected that the transcript was not the best evidence of what was on the tape, and was opinion. The court admitted the transcript.

The prosecutor also moved for permission to read the transcript to the jury. Defense counsel objected on the grounds of hearsay. The trial court instructed the jurors that in case of any discrepancies they were to follow the tape and not the transcript, and then allowed the prosecutor to read the transcript.

Neither the tape nor the transcript make any direct reference to defendant's wife or the crime defendant was plotting. The informant testified without objection as to the meaning of the conversations: that defendant was hiring him to kill defendant's wife. Defendant took the stand, and made no denial of the conversations that were taped, but told a totally different version of the meaning of the conversations. He admitted that he and the informant were planning criminal activity, but contended it had nothing to do with his wife.

Our comparison of the tape and the transcript reveals no inconsistencies. Defendant pointed out only one instance of alleged inaccuracy, but the trial court found the statement on the tape to be clearly audible and the version in the transcript to be correct. We agree with this finding.

■■■■ Defendant's principal complaint on appeal is that the court erred in admitting the transcript into evidence because the transcript is not the best evidence. This objection would have been proper had the tape not previously been admitted. See, State v. King, 557 S.W.2d 51, 54 (Mo. App.1977). In addition, the facts in the transcript were proved independently of the tape and transcript and, therefore, the best evidence rule does not apply. State v. Mack, 576 S.W.2d 550, 552 (Mo.App.1978).

Defendant also contends that the court, in admitting the transcript into evidence and in allowing the prosecutor to read it to the jury, violated the procedures we approved in State v. Montgomery, 590 S.W.2d 105 (Mo.App.1979). There we were confronted with the issue of the proper use of transcripts, and we quoted with approval the comments of Judge Webster [1] speaking for the U. S. Circuit Court of Appeals in the

1. The comments we quoted, which we still believe to be an excellent set of guidelines, are as follows:

The best evidence of the conversation is the tape itself; the transcript should normally be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the tape. If accuracy remains an issue, a foundation may first be laid by having the person who prepared the transcripts testify that he has listened to the recordings and accurately transcribed their contents. Cf. Fountain v. United States, 384 F.2d 624, 632 (5th Cir. 1967), cert. denied, 390 U.S. 1005, 88 S.Ct.

case of *U. S. v. McMillan*, 508 F.2d 101 (8th Cir. 1974) *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). The trial court discussed *Montgomery*, but apparently overlooked certain important comments by Judge Webster, which we quoted. These comments were that transcripts should not ordinarily be read to the jury or admitted into evidence. They should not be given independent weight, but may be used to aid the jury in listening to the tape. *See, U. S. v. McMillan*, 508 F.2d at 105–106.

The admission of the transcript and the reading of it to the jury were not in accordance with the guidelines we approved in *Montgomery*. Nevertheless, we have concluded that no prejudice to defendant resulted. The informant testified as to the substance of the conversations taped. Defendant made no objection to the offer of the tape, and freely admitted his participation in the conversations. The transcript contained no direct references to defendant's wife or to attempted murder, and defendant has not pointed out any inaccuracies in the transcript. In light of all these circumstances we cannot say that the use to which the transcript was put at trial prejudiced defendant.

Judgment affirmed.

SNYDER and CRIST, JJ., concur.

1246, 20 L.Ed.2d 105 (1968). Because the need for transcripts is generally caused by two circumstances, inaudibility of portions of the tape under the circumstances in which it will be replayed or the need to identify the speakers, *see United States v. Bryant*, 480 F.2d 785, 790–791 (2d Cir. 1973); *Fountain v. United States, supra*, 384 F.2d at 632; *United States v. Hall*, 342 F.2d 849, 853 (4th Cir.), *cert. denied*, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), it may be appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to the tapes. In the ordinary case this will not be prejudicially cumulative. *United States v. Fountain*, [sic] *supra*, 384 F.2d at 632. Transcripts should not ordinarily be read to the jury or given independent weight. The trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference. Transcripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence. *See generally* 17 Am.Jur.P.O.F. Tape Recordings as Evidence §§ 54–56 (1966).

*United States v. McMillan*, 508 F.2d 101, 105–106 (8th Cir. 1974). *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975).