STATE of Missouri, Respondent,

v.

Michael Lee SIMPSON, Appellant.

No. WD 37539.

Missouri Court of Appeals,
Western District.

Oct. 14, 1986.

Dennis D. Goodden, Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and BERREY and GAITAN, JJ.

NUGENT, Presiding Judge.

The defendant, Michael Lee Simpson, appeals his conviction by a jury of tampering in the first degree, a violation of § 569.-080.1(2), R.S.Mo. (Cum.Supp.1984), for removing two wheels from a new car on the lot of an automobile dealership. We affirm his conviction.

Defendant asserts that the trial court erred (1) in overruling his motion for judgment of acquittal at the close of all the evidence because the evidence was insufficient to support the charge of tampering; (2) in admitting into evidence a pair of rubber surgical gloves because that evidence was irrelevant, immaterial and prejudicial; and (3) in admitting into evidence copies of the factory invoice and the certificate of origin of the vehicle in violation of the best evidence rule.

Ken Steelman, a security guard for Legend Oldsmobile, an agency in Columbia, Missouri, testified that on December 12, 1984, at around 1:00 o'clock in the morning, he saw a Plymouth enter the lot of Legend Oldsmobile. Mr. Steelman was inside the showroom of the building looking out onto the lot. The headlights of the Plymouth were on as it entered the lot but were shut off as the car proceeded toward the back of the lot. The lighting conditions on the lot were good, and Mr. Steelman could see and identify the driver of the car as the defendant, whom he did not know and had never seen before. Defendant drove to the back of the lot, turned around, and stopped. Defendant got out of his car and walked to the back of the lot and then behind the body shop. He hurriedly walked back and stopped at a new 1985 Oldsmobile Cutlass Ciera. He moved between that car and another. Underneath the car, Mr. Steelman could see a flashlight beam, but he could not see what the defendant was doing.

Mr. Steelman called the police at around 1:10 a.m. When a police officer arrived, he told the officer where he had seen the defendant, and the officer arrested defendant. After the arrest, Mr. Steelman walked over to the Ciera and saw that its rear tires were missing and saw two tires and wheels in the back seat of the Plymouth.

Police Officer Terry Gunier testified that on December 12, 1984, he was dispatched to the Legend Oldsmobile dealership. When he arrived, he parked his car near the front entrance where he met the security guard, Ken Steelman. As he was speaking to the security guard, he saw the defendant on the lot, bent over rolling a wheel and carrying a lug wrench in his

hand. Defendant was putting this tire into his car when the officer placed him under arrest. Officer Gunier performed a pat down search for weapons and recovered a pair of surgical gloves, ten lug nuts and a flashlight from the defendant's coat pockets. The officer saw a second wheel and tire and a jack in the back seat of defendant's car. His investigation revealed that the two wheels and tires recovered from the defendant's car matched the front wheels and tires of the Ciera, the rear of which was on the ground. He found no lug nuts close by. Defendant told him that he "had purchased the tires from someone and was there at 1:30 in the morning to pick them up."

Edward Bell, general manager of Legend Oldsmobile, testified that he did not give defendant permission to remove the wheels from the Ciera and that neither Mr. Steelman nor any other employee was authorized to sell parts from the new cars.

Defendant testified as follows: On December 11, 1984, he drove to Columbia to shop for tires for his car. He looked for tires at several gas stations and car lots in town throughout the day. He drove to Legend Oldsmobile at around 2:30 or 3:00 in the afternoon and spoke with Mr. Steelman, whom he thought to be a salesman. Steelman told him he worked the night shift as security guard and told defendant to return then. Defendant returned at midnight. Mr. Steelman and the defendant walked over to the Ciera where Steelman told defendant he could take two tires from the car for $100. He paid Steelman $100 and proceeded to remove the tires. Mr. Steelman had gone back to the building to write a receipt for the sale of the tires, but before he returned, a policeman arrived and arrested defendant.

The defendant called two witnesses to corroborate his testimony. John Case testified that at around six p.m. on December 11, 1984, the defendant stopped by Mr. Case's trailer in Fulton, Missouri, to see if Mr. Case would like to accompany him to Columbia "to go look for some tires." Mr. Case declined the invitation. Another wit-

ness, John Belton, testified that he lent the defendant fifty dollars at 3:00 or 4:00 that afternoon when the defendant stopped by a trailer court in Fulton on his way to Columbia.

Facts pertinent to defendant's second point on appeal are as follows: He filed a pretrial motion in limine to exclude from evidence the rubber gloves found in his pocket at the time of his arrest. The trial court denied the motion. At trial, the defendant objected when the state offered the rubber gloves into evidence, but the objection was not made until after the jury had already heard testimony regarding them. Mr. Steelman had testified that he had never seen the gloves before trial. Officer Gunier testified that he discovered the gloves in the defendant's pocket pursuant to a pat down search for weapons.

Defendant testified that a doctor in the emergency room at the Fulton Hospital gave him the gloves a day or two before. The defendant's girlfriend had cut the side of her foot, requiring stitches. Defendant was to use the gloves to help her change the dressing on her wound. Officer Gunier testified that, to the best of his knowledge, the gloves had never been worn and that one glove had a streak of dirt on one finger.

Defendant's third point of error involves two photostatic copies of documents admitted into evidence. First, the state offered a copy of the factory invoice to identify the Ciera. Edward Bell, general manager of the agency, testified that "the original is in my file or sent down to the bank." Second, Mr. Bell identified further evidence presented by the state as a copy of the "MSO," the certificate of origin for the Ciera. After the incident, the vehicle was sold and the original MSO document went with the vehicle.

## I.

Defendant claims in Point I of his brief that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence. He contends that the state's evidence is wholly circumstan-

tial rather than direct so that "the facts and circumstances relied on by the state to establish guilt must be consistent with each other, consistent with the guilt of the defendant, and inconsistent with any reasonable theory of his innocence." *State v. Lee,* 556 S.W.2d 25, 32 (Mo.1977) (en banc). He cites authority to the effect that circumstantial evidence merely showing that the defendant had the opportunity to commit the offense charged and creating a suspicion of guilt, without more, is insufficient to sustain the conviction. *State v. Murphy,* 356 Mo. 110, 201 S.W.2d 280, 282–83 (1947) (en banc). *See State v. McGlathery,* 412 S.W.2d 445, 447 (Mo.1967). He argues that, because his conduct was not inconsistent with his innocent belief that Mr. Steelman was authorized to sell and did in fact sell him the wheels for $100, we must reverse the conviction.

■ Weighing the evidence to determine whether the defendant was guilty beyond a reasonable doubt is the role of the jury and not the function of the reviewing court. *State v. Brown,* 660 S.W.2d 694, 698 (Mo.1983) (en banc), citing *State v. Downs,* 593 S.W.2d 535, 542 (Mo.1980), and *State v. Eaton,* 504 S.W.2d 12, 16 (Mo. 1973). Our task is to decide whether the evidence, viewed in a light most favorable to the state, is sufficient to support the verdict. We must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. *Id.* at 699, citing *State v. Story,* 646 S.W.2d 68, 72 (Mo. 1983) (en banc). Such principles apply whether the evidence is direct or circumstantial. *State v. Lee, supra.*

The record reflects sufficient evidence from which the jury could believe the defendant knowingly altered the 1985 Ciera. Mr. Steelman and Officer Gunier place defendant at the scene, and Officer Gunier saw the defendant rolling a tire and wheel while carrying a lug wrench. The defendant was attempting to place the wheel and tire in the back seat of another vehicle when the officer arrested him. Officer Gunier found a second tire and wheel already

in the back seat of the car along with a jack. A search of defendant for weapons revealed a flashlight and ten lug nuts. The tires and wheels recovered from the back seat of defendant's vehicle matched those remaining on the Ciera.

■ Upon his arrest, the defendant explained that he had bought the tires and wheels and was in the process of picking up the merchandise at 1:00 a.m. while the salesperson prepared a sales receipt. Without so saying, defendant implies that this innocent explanation negates the culpable mental state required by § 569.080.1(2) that defendant *knowingly* altered an automobile without the consent of the owner. According to *State v. Brown, supra,* 660 S.W.2d at 699, citing *State v. Turner,* 623 S.W.2d 4, 7 (Mo.1981) (en banc), "direct proof of the required mental state is seldom available and such intent is usually inferred from circumstantial evidence." Even in a circumstantial evidence case, the evidence need not be conclusive of guilt, nor must the evidence exclude every hypothesis of innocence. *State v. Brown, supra,* 660 S.W.2d at 699; *State v. Lee, supra,* 556 S.W.2d at 32.

■ The evidence was sufficient for the jury to find that the defendant knowingly altered the Ciera without the consent of the owner. The night watchman testified that he had not met the defendant before the crime took place, and that he never gave defendant permission to take the tires. The manager of the agency testified that no employee was authorized to sell parts from the new cars. In addition to this testimony, the jury could consider the totality of the testimony and circumstances of record to infer guilty knowledge on the defendant's part, such as defendant's presence at the desolate car lot at around 1:00 a.m. and the items the arresting officer found in defendant's possession. Evidentiary conflicts are to be resolved by the jury. *State v. Overkamp,* 646 S.W.2d 733, 737 (Mo.1983). The fact that defendant's testimony "is at odds with the evidence which so substantially supports his conviction is not critical." *Id.* The jury

was entitled to disbelieve and reject any or all of the testimony of defendant and his witnesses. *State v. Neal,* 610 S.W.2d 358, 360 (Mo.App.1980), citing *State v. Holt,* 592 S.W.2d 759, 774 (Mo.1980) (en banc), and *State v. Wynn,* 391 S.W.2d 245, 247 (Mo. 1965).

## II.

For his second point, defendant claims that the trial court erred in admitting a pair of rubber surgical gloves into evidence. The officer who discovered the gloves in the defendant's coat pocket testified that, to the best of his knowledge, the gloves had never been worn. The gloves were spotless with the exception of a smudge mark on one finger. The defendant argues that, because there is nothing in the record to show that either fingerprints or their absence were part of the evidence introduced by the state, the gloves were not relevant. Relying upon *Hungate v. Hudson,* 353 Mo. 944, 185 S.W.2d 646, 648 (1945), defendant claims prejudicial error on the ground that the admission of the gloves at trial could only have served to confuse and to inflame the jury.

■ Before turning to the merits of defendant's claim, we note that the error was properly preserved for appellate review despite the state's contention that the defendant's objection to the admission of the evidence came too late. The state correctly asserts that the filing of a motion in limine preserves nothing for appellate review, and that to preserve the error a party must make a contemporaneous objection when the evidence is introduced at trial. *State v. Mason,* 650 S.W.2d 15, 17 (Mo.App.1983); *State v. Holt,* 659 S.W.2d 233, 235 (Mo.App. 1983). The state's criticism is simply that defendant's objection, made at the time the state offered the gloves into evidence, came too late because the jury had already heard testimony about the gloves from Mr. Steelman and Officer Gunier without objection. *See State v. Cannady,* 660 S.W.2d 33, 37 (Mo.App.1983), citing *State v. Brown,* 604 S.W.2d 10, 14–15 (Mo.App. 1980) ("a specific objection to evidence made after the evidence has been introduced comes too late").

■ However, the court suggests in *State v. Brown, supra,* that an objection to exhibits either at the time they were identified or at the time they were formally introduced into evidence, would have been timely. Defendant's objection made at the time the state offered the gloves into evidence, along with his assertion of the error in his motion for new trial, sufficed to preserve the point for review. We now turn to the substance of Mr. Simpson's claim.

■ The determination of whether evidence is relevant and whether its probative value outweighs its inflammatory and prejudicial dangers rests within the sound discretion of the trial judge, whose decision will not be disturbed absent a showing of abuse of discretion. *State v. Gibson,* 636 S.W.2d 956, 958 (Mo.1982) (en banc); *State v. Ferguson,* 678 S.W.2d 873, 878 (Mo.App. 1984). "[C]ircumstantial evidence is relevant and will be admitted 'if it tends logically to prove or disprove, [or] to support or establish a fact or issue between the parties.'" *State v. Cox,* 527 S.W.2d 448, 453 (Mo.App.1975), quoting *State v. Jenkins,* 516 S.W.2d 522, 525 (Mo.App.1974), and citing *State v. Walden,* 490 S.W.2d 391, 393 (Mo.App.1973).

Here, the fact of the defendant's intent is susceptible to proof by circumstantial evidence. *State v. Turner,* 623 S.W.2d 4, 7 (Mo.1981) (en banc). "[W]hen evidence is circumstantial, the state is permitted to show facts which, when standing alone, may be without probative force, but when connected by evidence with other facts are admissible as material, even when they tend only remotely to establish the ultimate fact." *State v. Dees,* 639 S.W.2d 149, 158 (Mo.App.1982). Such evidence need not demonstrate an absolute impossibility of innocence. *State v. Brown, supra, State v. Cox, supra,* at 453.

■ The trial judge in the present case did not abuse his discretion in admitting the rubber gloves into evidence. They con-

stituted circumstantial evidence which the jury could properly consider in determining the fact of defendant's culpable mental state. *Compare State v. Cox, supra,* 527 S.W.2d at 453–54, where the defendant claimed that the trial court erred in overruling his objection to the introduction of bib overalls which had secret pockets sewn into the inside lower legs. Because the overalls were not shown to be used in connection with a crime, the defendant contended that their introduction into evidence had a highly prejudicial effect in that the jury could infer an intent to steal from the unique construction of the overalls. The court of appeals upheld the ruling of the trial judge, finding that the overalls, coupled with the fact that defendant was in possession of an extension cord belonging to the victim, were relevant and tended to have a bearing on the ultimate fact to be established, defendant's intent to steal.

█ In the instant case, defendant Simpson had ample opportunity to explain how the gloves came into his possession and was free to call his own witnesses to show the reason for his possession of them. He suffered no prejudice from the trial judge's ruling.

### III.

In his final point, defendant complains that the trial court violated the best evidence rule when it admitted photostatic copies of the factory invoice and the certificate of origin of the Ciera over his objection.

█ Whenever the purpose is to establish the terms of a writing, the best evidence rule requires that the writing itself must be produced unless it is not feasible. *State v. Coleman,* 441 S.W.2d 46, 51 (Mo. 1969), citing 4 J. Wigmore, Wigmore on Evidence § 1178, at 316 (3rd ed. 1940). Defendant asserts that nothing in the record shows that the original documents were not readily obtainable. In fact, Edward Bell, the agency's general manager, testified that the original factory invoice was kept either in his office or on file with the company's bank and that the certificate of origin accompanied the car when it was later sold.

█ In denying defendant's final claim of error, we rely upon *State v. Curry,* 473 S.W.2d 747, 748–49 (Mo.1971), which closely parallels this case. The Supreme Court held that "[t]he best evidence rule has no application where, as here, the contents of the writing are not in issue and parol testimony is not offered to establish the terms of the writing but to establish a fact which exists independently of the writing." In such a case, both the written document and the oral testimony by one with knowledge of the matter constitute primary evidence, and either may be used to prove the fact. *Id.* at 749; *State v. Prince,* 628 S.W.2d 920, 921 (Mo.App.1982); *State v. Mack,* 576 S.W.2d 550, 552 (Mo.App.1978).

In *Curry,* the court held that oral testimony that a witness was the owner of an automobile is competent, primary evidence of the fact of ownership, so that it was not necessary to introduce the certificate of title in evidence to prove ownership. 473 S.W.2d at 749.

█ The fact that the defendant never contested Legend Oldsmobile's ownership of the Ciera is dispositive of his third claim of error, as the best evidence rule comes into play only when the terms of a writing are in dispute. *State v. Smith,* 650 S.W.2d 640, 641 (Mo.App.1983), citing *Moschale v. Mock,* 591 S.W.2d 415, 419 (Mo.App.1979). Therefore, the photostatic copies of the factory invoice and the certificate of origin were merely cumulative evidence, and their admission into evidence did not violate the best evidence rule.

For the foregoing reasons, we affirm the judgment.

All concur.