STATE of Missouri, Respondent,

v.

Ben BURSE, Appellant.

No. ED 88666.

Missouri Court of Appeals, Eastern District, Division Two.

June 19, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 13, 2007.

Application for Transfer Denied Sept. 25, 2007.

Matthew M. Ward, Assistant Public Defender, Columbia, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

*Introduction*

Ben Burse ("Defendant") appeals from the trial court's judgment entered in the Circuit Court of Monroe County, after a bench trial, upon his conviction of two counts of assault of a law enforcement officer in the first degree, two counts of armed criminal action and one count of tampering in the first degree, in violation of sections 565.081, 569.080, and 571.015.[1] Defendant contends the trial court erred in overruling his Motion for Judgment of Acquittal at the close of the State's evidence, because the evidence was insufficient to prove Defendant guilty beyond a reasonable doubt on all counts. We hold that there was sufficient evidence to support Defendant's convictions, and accordingly, affirm.

**Statement of Facts and Proceedings Below**

Viewed in the light most favorable to the verdict, the evidence at trial establishes that, on August 7, 2005, at about 1:15 a.m. in Hannibal, Missouri, Officer Andrew Tripp pulled Defendant over for speeding. Once Officer Tripp had initiated the traffic stop, Defendant exited and began walking towards Officer Tripp. Officer Tripp instructed Defendant to return to his car and Defendant complied. Officer Tripp then approached the car and spoke with Defendant and his two passengers. After obtaining Defendant's name and additional information from all three occupants of the car, Officer Tripp observed Defendant reach under the front seat of the car and ordered Defendant to keep his hands where he could see them.

Officer Tripp next looked inside the vehicle and saw a baggie containing a white powdery substance located inside the recess of the door handle, partially covered by Defendant's arm. Officer Tripp reached into the vehicle, removed the bag and walked back to his patrol car to radio for assistance. Within a few minutes, Officer Brooks arrived and parked behind Officer Tripp's patrol car. While Officer Tripp and Officer Brooks discussed the situation, Defendant told his companions that he was counting to three and then he "was going to make a break for it." Defendant jumped out of the car, looked at the officers, and ran. He fled diagonally across the bridge to the far side, jumped over the guard rail and ran down into the ditch under the bridge. Officer Tripp immediately began following Defendant into the ditch and, after arriving on the scene, Officers Johnston and Officer Burgun joined Officer Tripp and the three went down the embankment and into the woods, while Officer Brooks remained with the other two passengers of the vehicle.

The patch of woods entered by Defendant was thick with trees and underbrush

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

in some areas, and clear with gravel and a stream in others. As the officers searched the woods, Officer Tripp stayed the closest to the bridge, while Officer Johnston and Officer Burgun each walked a little further out respectively. The officers searched with flashlights and kept their guns drawn. While each could hear the other's footsteps, none of the three could hear any other movement in the woods. Defendant had hidden himself in the woods by the bridge and, when Officer Tripp approached the area in which he was hiding, Defendant aimed his .38 caliber revolver in Officer Tripp's direction and fired the weapon. Although the officers neither felt, saw, nor heard the bullet coming towards or near them, all three heard the revolver discharge and took cover.

Officer Johnston approached Officer Tripp to ascertain if he had been injured and, upon determining that the shot had missed Officer Tripp, left him behind the tree and proceeded toward the bridge. When Officer Johnston reached Officer Tripp's position at the time of the shot, Defendant aimed his .38 revolver at Officer Johnston and fired. As Defendant fired at Officer Johnston, Officer Johnston heard the shot, and saw the "muzzle blast" from the end of the gun and the silhouette of Defendant's arm extended, pointing towards him, in the light from the blast. Officer Johnston ran for cover. The officers called for backup and upon the arrival of additional officers, a K–9 unit and a helicopter, a search of the woods ensued. No bullets, bullet casings or bullet fragments were found.

Meanwhile, Defendant ran through the woods until he reached the home of Ms. Jessica Wells, approximately five minutes away. Defendant found a key to Ms. Wells' truck and, after several attempts, started the truck and drove it away at approximately 2:00 a.m. Ms. Wells' neighbor, Ms. Utley, heard the truck start and saw it drive away at some time between 1:30 and 2:00 a.m., but could not identify the driver. The next morning Ms. Wells discovered her truck missing and called the police to report it stolen.

Defendant drove Ms. Wells' truck from Hannibal to Louisiana, Missouri, and left the truck on property owned by a relative. He then went to another nearby relative's house and while there spoke to his brother, Jameel Chatman, and a cousin. According to Mr. Chatman, Defendant told him, among other things that he fired twice in the direction of police officers while he was running away in the woods.

By 7:00 p.m. on August 7, the police discovered Defendant's location and surrounded the house. Defendant attempted to run from police but was eventually subdued. Police officers arrested Defendant, searched him and found three .38 caliber bullets in his pockets. Officers transported Defendant to Pike County Jail. Police officers later located Ms. Wells' stolen truck a block from Defendant's location. In the truck, they discovered lying on the middle of the bench seat a .38 caliber five-shot revolver, fully loaded with .38 caliber hollow-point ammunition.[2]

The following day, Detective Weber of the Hannibal Police Department interviewed Defendant at the jail. After receiving his *Miranda*[3] warnings, Defendant made several statements, including: "what difference does it make to give a statement;" "[I'm a] three time loser;" and "[i]t's going to come down that I did it

---

**2.** Officers found the ignition key to the truck later that night in Defendant's personal belongings at the Pike County Jail.

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

anyway." Detective Weber also spoke with Defendant's brother, Mr. Chatman, at the Louisiana Police Station. During the interview, Mr. Chatman stated that Defendant had told him and his cousin about the shooting. Mr. Chatman also signed two written statements confirming that Defendant told him that he "shot toward an officer and then another."

Defendant waived his right to a jury trial and the case proceeded before the bench. At the bench trial, the State asked Officer Tripp and Officer Johnston to give their opinions as to which caliber of gun they had heard in the woods. Officer Tripp stated that the gun he heard in the woods was between a .22 caliber and a .45 caliber. Officer Johnston testified that the gun he heard in the woods was either a .32 or a .38 caliber and that "I felt that it was a .38."

The State next called Mr. Chatman to the stand. Mr. Chatman testified that he had never spoken to Defendant about the incident in question. He further claimed that he had not seen Defendant on August 7, 2005, the police made up everything in his statement, and he had only signed the statement because the police promised he could go free if he did. Thereafter, the State introduced Mr. Chatman's prior statements into evidence.

At the conclusion of the State's case, Defendant moved for Judgment of Acquittal. The trial court denied Defendant's Motions for Judgment of Acquittal and found Defendant guilty of all charges. At the sentencing hearing, the court sentenced Defendant to twenty-five years of imprisonment for each assault and armed criminal action count and five years of imprisonment for tampering, with the assault and armed criminal action counts running consecutively and the tampering count running concurrently. Defendant appealed.

## *Standard of Review*

The standard of review in a bench-tried case is the same as in a jury-tried case. *State v. Johnson,* 81 S.W.3d 212, 215 (Mo. App. S.D.2002). We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. *State v. Small,* 873 S.W.2d 895, 896 (Mo.App. E.D.1994). "When reviewing the sufficiency of the evidence, we review all evidence and inferences reasonably draw from the evidence in the light most favorable to the verdict and disregard all contrary evidence and inferences." *State v. Berry,* 54 S.W.3d 668, 675 (Mo.App. E.D.2001). "The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness." *State v. Warren,* 141 S.W.3d 478, 490 (Mo.App. E.D.2004). The function of the reviewing court is not to reweigh the evidence, but only to determine if the evidence is supported by sufficient evidence. *State v. McCleod,* 186 S.W.3d 439, 443 (Mo.App. W.D.2006).

## *Discussion*

### A. Sufficiency of the Evidence/Assault

■ In his first point, Defendant claims the trial court erred when it denied his Motion for Judgment of Acquittal at the close of the State's case-in-chief, because there was insufficient evidence to prove that Defendant had intended to kill or cause serious physical injury to Officer Tripp and Officer Johnston.

■ A defendant is criminally liable for assault of a law enforcement officer in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement

officer. Section 565.081. "One attempts to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step toward commission of the offense." *State v. Whalen*, 49 S.W.3d 181, 186 (Mo. banc 2001). "A substantial step is conduct which is strongly corroborative of the firmness of an actor's purpose to complete the commission of the offense." *State v. Withrow*, 8 S.W.3d 75, 78 (Mo. banc 1999). "To act purposely means that it is the actor's conscious object to engage in certain conduct or cause a certain result." *Whalen*, 49 S.W.3d at 187. Thus, there is a "clear requirement that conviction of an attempt to kill or to cause serious physical injury requires proof of a very specific intent on the part of the actor to accomplish that objective." *Id.* at 186 (quoting *State v. Gonzales*, 652 S.W.2d 719 (Mo.App. W.D. 1983)).

"Intent is generally not susceptible of direct evidentiary proof and may be based upon circumstantial evidence or inferred from surrounding facts." *State v. Johnson*, 948 S.W.2d 161, 166 (Mo.App. E.D.1997). The trier of fact may draw "such reasonable inferences from the evidence as the evidence will permit, and may believe or disbelieve all, part or none of the testimony of any witness." *Id.* "Intent may be inferred from surrounding facts, such as evidence of defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct, as well as the type of weapon used, manner and circumstances under which it is used, results, and other relevant factors." *State v. Mann*, 129 S.W.3d 462, 467 (Mo. App. S.D.2004).

Here, when Officer Tripp stopped Defendant for speeding, the officer found a baggie of apparent cocaine in the front door handle of the car. When another officer arrived, Defendant jumped out of the car, ran across the bridge and down into the woods. The officers followed and, when Officer Tripp approached his hiding spot, Defendant took out his .38 revolver and fired it at the officer. After Officer Tripp ran for cover, Officer Johnston moved forward in the woods. When Officer Johnston reached the exact same spot where Defendant had fired at Officer Tripp, Defendant fired again at Officer Johnston. Defendant then fled into the woods until he found and stole a truck, which he used to drive to a relative's house in another city. When the police located Defendant and converged on the house in which he had hidden himself, Defendant ran out the back door and was only apprehended at gun point. While in custody, Defendant informed an officer that it did not matter if he made a statement because the evidence would show he was guilty anyway. Thus, there was sufficient evidence from which a trier of fact could reasonably infer that Defendant took a substantial step toward killing or causing serious physical injury to the officers.

Moreover, Defendant admitted that he had fired his weapon at the officers. Defendant's brother, Mr. Chatman gave two statements to the police, in which he stated that Defendant had told him that, after he had fled into the woods, "one of the officers got close to him [and] he fired in his direction. He stated that he fired again in that direction." Intentionally discharging a "weapon in the proximity of a police officer is illustrative of [a] decision to take a substantial step toward injuring the police officer if necessary" to escape. *Mann*, 129 S.W.3d at 467. These facts, when viewed with Defendant's flight from the officers mere moments before, give rise to a reasonable inference that Defendant took a substantial step toward inflicting serious injury on the officers to avoid apprehension.

Defendant, however, argues that, under this court's opinion in *State v. Harty*, 569 S.W.2d 783 (Mo.App.St.L.D.1978), he lacked the necessary specific intent to commit an assault in the first degree. Defendant's reliance on *Harty* is unpersuasive. In *Harty*, this court reversed a defendant's conviction when we determined that, while the evidence was sufficient to establish that the defendant discharged a gun, no evidence established that the defendant had actually aimed at the victims. *Id.* at 783. Unlike the present matter, in *Harty*, the defendant was standing three-hundred feet away from the victims, the victims could not tell at whom the defendant was shooting, the victims and the defendant did not know each other and there were other possible targets in the area. *Id.* Although Harty said, "I'm going to kill you and your whole family," there was no evidence that Defendant directed the statement to the victims and there was no motive behind the crime. *Id.* at 784. Finding no evidence to support the allegation that defendant shot at the victims, we held that the evidence was insufficient to find the defendant guilty of "assault with intent to kill with malice." *Id.* at 783–84.

In the present matter, however, Defendant had a strong motive to shoot the officers in order to escape capture and a prison sentence. Unlike *Harty*, where the gun shots came from three-hundred feet away, here, Defendant did not shoot until the officers "got close to him." Both officers heard the shots coming from directly in front of them, at the exact location where Defendant had entered the woods, and Officer Johnston saw, in the "muzzle flash," that the gun, and the arm holding it, was pointing at him. Unlike the defendant in *Harty's* ostensibly random shoot-ing, Defendant shot with purpose in order to evade capture. Point denied.

■ In his second point, Defendant asserts that the evidence presented by the State was insufficient to meet the State's burden of proving, beyond a reasonable doubt, that Defendant was the individual who committed the assaults, because: (1) no one saw his face or otherwise perceived him while he was in the woods; (2) no one saw him with a gun; (3) the amount of time between when the shots were fired and the truck was stolen, was too short to permit shots at the officers; and (4) his "confession" was unreliable.

Contrary to Defendant's assertions, the record includes evidence from which a reasonable trier of fact could find Defendant's presence in the woods beyond a reasonable doubt. Namely, although no one saw Defendant's face in the woods, the officers saw Defendant run into the woods alone just before 1:30 a.m. The officers immediately followed Defendant and shots were fired at 1:28 and 1:29 a.m. respectively. The police did not lose sight of Defendant until he entered the woods and less than five minutes passed between the time he entered the woods and the time of the first shooting. Defendant then ran the five-minute distance to the truck and fled the area.[4] After Defendant fled, no one, besides the officers, remained in the woods. Moreover, Defendant told his brother and cousin that he had shot at both officers and then fled the scene.

The record also contains sufficient evidence tying Defendant to the gun used in the assault. The officers identified the gun as a .38 caliber revolver. Officers seized .38 caliber hollow-point bullets from Defendant and found a .38 caliber revolver in the stolen truck.

---

**4.** The State established at trial that it would take an average person 5 minutes to run through the woods from the bridge to the street on which Ms. Utley and Ms. Wells' live.

Defendant further claims that the brief amount of time that elapsed between when Officer Tripp stopped Defendant for speeding and when someone stole Ms. Wells' truck away makes it unlikely that Defendant had the time to shoot at the officers and still make his escape. Essentially, he posits, he could have only had time to either shoot at the officers or steal the truck but not both. However, Defendant's argument ignores the State's evidence that approximately 30 minutes passed between the moment Defendant shot at the officers and the time that he stole the truck. Based on the record established at trial, 30 minutes was more than sufficient time to make the five-minute run and steal Ms. Wells' truck.

 Finally, Defendant argues that his statement to Mr. Chatman was "unreliable" because at trial Mr. Chatman denied ever speaking to Defendant about the incident. Therefore, contends Defendant, his statements cannot serve as evidence of guilt. Defendant, however, misunderstands the effect of Mr. Chatman's previous statement to the police. The trial court, as the trier of fact, was entitled to judge Mr. Chatman's credibility and credit his earlier statement to the police and disbelieve his recantation. "Any contradictions between a witness' trial testimony and any previous testimony are for the trier of fact to reconcile and consider when judging the witness's credibility." *State v. Waddell*, 164 S.W.3d 550, 553 (Mo.App. S.D.2005). Point denied.

## B. Sufficiency of the Evidence/Tampering

 In his third point, Defendant claims that the trial court erred when it denied his Motion for Judgment of Acquittal at the close of the State's evidence because there was not sufficient evidence to prove beyond a reasonable doubt that Defendant did not have permission to possess or operate the truck.

A defendant is criminally liable for tampering in the first degree if he, *inter alia*, knowingly possesses an automobile without the consent of the owner thereof. Section 569.080.1(2). Defendant does not dispute that he possessed or operated Ms. Wells' truck at some point during the day of August 7, 2005. Instead, Defendant asserts that the evidence presented by the State was insufficient to meet the State's burden of proving, beyond a reasonable doubt, that Defendant possessed and/or operated Ms. Wells' truck unlawfully. Specifically, Defendant argues that the State failed to prove that Defendant did not speak with Ms. Wells that night—or at some other time—and get her permission to take the truck.

 We disagree. In a first-degree tampering case, the State need not adduce direct evidence establishing the defendant's culpability, but may instead rely on circumstantial evidence to prove the elements of the crime charged. *See e.g., State v. Holleran*, 197 S.W.3d 603, 611 (Mo.App. E.D.2006) ("The exclusive and unexplained possession of recently stolen property is a circumstance a jury can consider, along with other facts and circumstances, to draw the inference that the possessor of stolen property knew the property was stolen."); *State v. Simpson*, 718 S.W.2d 143, 146 (Mo.App. W.D.1986) (holding that sufficient circumstantial evidence supported the jury's finding that defendant knowingly altered a vehicle without the consent of the owner). "[I]t is well settled that a conviction based solely on circumstantial evidence is as legitimate as one founded on direct evidence." *State v. Shelton*, 589 S.W.2d 658, 659 (Mo.App. E.D.1979). "Even in a circumstantial evidence case, the evidence need not be conclusive of guilt, nor must the evidence

exclude every hypothesis of innocence." *State v. Presberry,* 128 S.W.3d 80, 96 (Mo. App. E.D.2003); *Simpson,* 718 S.W.2d at 146. Further, the jury is free to "consider the totality of the testimony and circumstances of record to infer guilty knowledge on the defendant's part[.]" *Id.*

Contrary to Defendant's assertions, the record includes evidence from which a reasonable trier of fact could find Defendant possessed Ms. Wells' truck without her permission. Namely, at trial, Detective Hughes identified pictures of the truck Defendant took as the "vehicle that was reported stolen from Hannibal, Missouri on the night of the shooting." Moreover, on direct examination, Ms. Wells' neighbor, Ms. Utley, testified that the "truck got stolen." Further, as the State correctly points out, the circumstances of the crime give rise to an inference that Defendant stole the truck. An officer stopped Defendant on a bridge, he ran into nearby woods, shot at two officers, "took off running," and minutes later arrived at Ms. Wells' truck. Defendant took the truck between 1:30 and 2:00 a.m., drove off with it, left it on land connected to his family in a different city, and then walked a block to his relatives house. A reasonable inference from Defendant's flight from a traffic stop in a random area, running through the words, taking an old truck located near the scene of the crime, driving it to another town, and leaving it a block away from his final destination is that the truck was stolen. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

GEORGE W. DRAPER III, P.J., and ROBERT G. DOWD, JR., J. Concur.