

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,            )
                                  )
         Respondent,      )
                                  )    **WD86284**
      v.                        )    **OPINION FILED:**
                                  )    **NOVEMBER 19, 2024**
SAMUEL LEE HINES,       )
                                  )
         Appellant.       )

**Appeal from the Circuit Court of Lafayette County, Missouri**
**The Honorable Dennis A. Rolf, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,**
**Mark D. Pfeiffer, Judge, Gary D. Witt, Judge**

Samuel Hines appeals his conviction after bench trial in the Lafayette County

Circuit Court for the class A felony of trafficking in the first degree on an attempt theory,

section 579.065,[1] and the class D felony of unlawful possession of a firearm, section

571.070. In his sole point on appeal, Hines claims that insufficient evidence was

presented of his possession or purpose. He argues he did not have joint constructive

possession of concealed fentanyl and that he did not know the nature of the pills. The

judgment is affirmed.

---

[1] All statutory citations are to RSMo 2016 as supplemented through December 2021 unless otherwise stated.

## Facts[2]

On October 27, 2022, Samuel Hines was charged by second amended information with trafficking in the first degree and unlawful possession of a firearm. Count I stated:

> [O]n or about December 9, 2021, in the County of Lafayette, State of Missouri, the defendant knowingly possessed fentanyl, a controlled substance, within a motor vehicle while traveling on the Interstate, and such conduct was a substantial step toward the commission of, and was done for the purpose of committing, the offense of trafficking in the first degree, by attempting to distribute, deliver or sell to unknown persons the controlled substance, and the amount of fentanyl was more than 20 milligrams.

The matter proceeded to a bench trial. The following evidence was presented:

On December 9, 2021, a highway patrol trooper ("Trooper") stopped a white Kia Optima for speeding. Trooper had received information from the federal Drug Enforcement Agency ("DEA") about a vehicle that could be approaching his location containing fentanyl. Trooper was informed that two people from Georgia, an older Black male in the passenger seat and a younger Black female was in the driver's seat, were traveling in an unknown white vehicle from Topeka, Kansas to his location.

When Trooper contacted the vehicle, he smelled a strong odor of air freshener coming from the vehicle. Trooper testified about the air freshener that "[i]t is common for individuals to use masking odors inside of vehicles. It can be an indicator of people trying to mask an illegal odor." Trooper described the driver and passenger as having "fearful expressions" on their faces. He testified:

---

[2] Our statement of facts is made, in accordance with the standard of review, in the light most favorable to the verdict. *State v. Dill*, 693 S.W.3d 177, 180 (Mo. App. S.D. 2024).

2

> Well, it was just they were both alarmed at my presence of being at the vehicle. And normally whenever I stop someone and it's just a traffic offense only and no other criminal activity is afoot, normally it's just a more relaxed – it's more relaxed body behavior from the individuals in the vehicle.

Trooper identified Hines as the passenger from his Georgia driver's license. The driver of the vehicle ("Driver") was also from Georgia and had rented the vehicle.

Trooper removed Driver from the vehicle and placed her in his patrol vehicle. Driver admitted to having marijuana in the vehicle. Driver also admitted to having a handgun in her purse. She stated she thought Hines also possessed a handgun.

After Driver admitted to having marijuana in the vehicle, Trooper requested that Hines hand the marijuana to Trooper, and Hines did so. During a probable cause search of the vehicle, Trooper found yellow kitchen gloves in the vehicle glove box, which he typically sees when dealing with dangerous substances. A Taurus handgun reported stolen from DeKalb County, Georgia was found between the passenger seat and passenger door, where Hines had recently occupied.

A plastic sack was found on the rear floorboard behind the passenger seat. A white hoodie matching Hines's pants was found in this sack along with white towels. Also within the plastic sack was a Kleenex box matching the DEA informant's description. Within the Kleenex box were three quart bags with small blue pills imprinted with M 30 on each side. Trooper testified this imprint was a common trend where an oxycodone pill press was hijacked and used to pass off fentanyl as counterfeit oxycodone and to transport non-powder fentanyl. Next to the Kleenex box was a brick-

3

shaped item wrapped in black electrical tape. This "kilogram" contained a white powdery substance. The powder wrapped in electrical tape as a brick weighed more than 20 milligrams and contained fentanyl.

Trooper testified that Hines told Trooper that he did not know about the kilogram of fentanyl beside the small blue pills. Hines told Trooper that he went to Denver, Colorado to purchase the blue pills which he thought were oxycodone. Trooper's testimony was Hines told him he purchased these blue pills because he has ten children in Georgia that he was trying to support. Trooper testified he learned from both Hines and Driver that Hines paid Driver $200 per day to take him to Denver pick up oxycodone so he could support the ten children he had in Georgia.

Hines also told Trooper he had a handgun in his pocket. Trooper testified that Hines told him he "thought about pulling the handgun out and shooting himself in the head[…a]nd he told me that he heard a voice from God that told him not to do that."

The trial court found Hines guilty on both counts as charged. Hines was sentenced as a prior and persistent felony offender to a total of thirty years' imprisonment. This appeal follows.

**Standard of Review**

"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *State v. Dill*, 693 S.W.3d 177, 180 (Mo. App. S.D. 2024) (internal quotation marks omitted). "In such a review, we

4

accept[ ] as true all the evidence favorable to the verdict, including all favorable inferences properly drawn from the evidence, and disregard[ ] all evidence and inferences to the contrary." *Id*. (internal quotation marks omitted).

"We do not weigh the evidence. Instead, we defer to the fact-finder's superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." *Id.* (internal quotation marks omitted). "The State may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime. Circumstantial evidence is given the same weight as direct evidence and the jury is free to draw reasonable inferences from the evidence presented." *Id*. (internal quotation marks omitted). "Our summary of the relevant evidence is presented in accordance with these standards." *Id*.

### Analysis

Section 579.065 states in relevant part:

> 1. A person commits the offense of trafficking drugs in the first degree if …
> such person knowingly … attempts to distribute, deliver…:
> …
> (12) More than ten milligrams of fentanyl … or substance containing a
> detectable amount of fentanyl ….
> …
> 3. The offense of trafficking drugs in the first degree is a class A felony if
> the quantity involved is:
> …
> (14) Twenty milligrams or more of fentanyl … or any compound, mixture,
> or substance containing a detectable amount of fentanyl ….

Section 562.012 states in relevant part:

1. Guilt for an offense may be based upon an attempt to commit an offense if, *with the purpose of committing the offense*, a person performs any act which is a substantial step towards the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

(Emphasis added). "A person 'acts purposely', or with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result." § 562.016.2.

"Purpose is also defined as 'specific intent.'" *Saucedo v. State*, 685 S.W.3d 65, 68 (Mo. App. S.D. 2024) (internal quotation marks omitted). "Intent is generally not susceptible of direct evidentiary proof and may be based upon circumstantial evidence or inferred from surrounding facts." *State v. Burse*, 231 S.W.3d 247, 252 (Mo. App. E.D. 2007) (internal quotation marks omitted). "Intent may be inferred from surrounding facts, such as evidence of defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct, as well as the type of weapon used, manner and circumstances under which it is used, results, and other relevant factors." *Id*. (internal quotation marks omitted).

"Although possession … is not an element of the crime of first-degree trafficking, evidence of knowing possession may support the conviction when the state alleges that the defendant attempted to distribute, deliver, manufacture or produce the controlled substance, and this evidence may be circumstantial." *State v. Stover*, 388 S.W.3d 138, 146 (Mo. banc 2012). "Substantial evidence that [the defendant] possessed the contraband, then, will supply the requisite knowledge of its presence to support a

6

conviction for trafficking in the first degree." *Id*. Section 195.010(38) defines

"possessed" or "possessing a controlled substance" as:

> [A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his or her person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint;

"To prove possession of a controlled substance, the state must show conscious and intentional possession of the substance, either actual or constructive, and awareness of the presence and nature of the substance." *Stover*, 388 S.W.3d at 146-47. "Proof of a defendant's knowledge often is supplied by circumstantial evidence of the acts and conduct of the defendant that permit an inference that he or she knew of the existence of the contraband." *Id*. at 147.

"In cases involving joint control of an automobile, a defendant is deemed to have both knowledge and control of items discovered within the automobile, and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items." *Id*. (internal quotation marks omitted). "This additional evidence must demonstrate sufficient incriminating circumstances to permit the inference of a defendant's knowledge and control over the controlled substance." *Id*. (internal quotation marks omitted).

7

[A]dditional incriminating circumstances that could support an inference of knowledge and control of the items [include]:

Finding a large quantity of drugs in the vehicle;
Finding drugs having a large monetary value in the vehicle;
Easy accessibility or routine access to the drugs;
The odor of drugs in the vehicle;
The presence of the defendant's personal belongings in close proximity to the drugs;
Making false statements in an attempt to deceive the police;
The defendant's nervousness during the search;
The defendant's flight from law enforcement;
The presence of drugs in plain view;
Other conduct and statements made by the accused; and
The fact that the defendant rented the vehicle.

*Id*. "These factors … while not exhaustive, guide this Court's analysis of whether additional incriminating circumstances sufficiently connected" the defendant to the items.

*Id*. "The totality of the circumstances is considered in determining whether the evidence of additional incriminating circumstances sufficiently supports an inference of knowledge and control." *State v. Maldonado-Echieverra*, 398 S.W.3d 61, 65 (Mo. App. W.D. 2013).

In his sole point on appeal, Hines argues insufficient evidence was presented that he had joint constructive possession of the concealed fentanyl or that he had the very specific purpose to possess the fentanyl to commit the offense of trafficking. He argues that fearful expressions and the aroma of air freshener are not additional incriminating circumstances supporting an inference of constructive possession. He relies on the following caselaw:

8

"When a defendant has another equally probable reason for marked nervousness, there must be evidence of an additional incriminating fact before a permissible inference can be drawn that the defendant had knowledge of and control over the drugs located in the vehicle." *State v. Barnett*, 595 S.W.3d 515, 523 (Mo. App. E.D. 2020) (internal quotation marks omitted). "Nervousness during a search when combined with access to the contraband is insufficient to support an inference of knowledge and control." *Id*. Further, "[w]ithout additional incriminating circumstances to support an inference of knowledge and control, the State can not merely rely on [the defendant's] nervousness or the air freshener odor as sole factors to support a conviction." *State v. Maldonado-Echieverra*, 398 S.W.3d 61, 67 (Mo. App. W.D. 2013). There is a difference between the odor of illegal drugs being present and the odor of air freshener being present. *Id*.; *see also State v. Franco-Amador*, 83 S.W.3d 555, 559 (Mo. App. W. Dist. 2002) ("Considering the totality of these circumstances together: nervousness, flight, duct tape and masking odors, this court cannot say that this evidence was sufficient to find that [the defendant] constructively possessed the methamphetamine….").

Hines acknowledges these circumstances in his case: Trooper testified Hines had a "fearful expression" and appeared "animated." A strong air freshener odor exuded from the vehicle. A stolen Taurus handgun was found between the passenger seat and passenger door, where Hines had recently occupied. The plastic bag with the Kleenex box concealing pills and the electrical-tape-wrapped brick of fentanyl were found behind the passenger seat. A hoodie matching Hines's pants was found in that plastic bag. Hines

9

argues that, if the fearful expressions and odor of air freshener are excluded, the remaining additional circumstances are insufficient to show Hines knew the fentanyl was in the vehicle.

Trooper testified that Hines paid Driver $200 per day to take him to Denver to pick up oxycodone. When Driver admitted to having marijuana in the vehicle, Hines handed it to Trooper. Hines notes, however, that "[f]amiliarity with drugs is not one of the incriminating circumstances to be considered in showing constructive possession." *Barnett*, 595 S.W.3d at 524.

Finally, Hines argues that, even if he knew possessing fentanyl was a step forward in trafficking, he did not purposefully traffic fentanyl. Hines concludes that there was insufficient evidence that he had constructive possession of the fentanyl and that he did so for the purpose of trafficking.

We disagree. Trooper testified that Hines was unable to tell Trooper what he and Driver were doing on the trip. Hines told Trooper a different story from the one Driver told Trooper about their trip. Hines did not want to exit the rental vehicle when asked. Hines kept yelling phrases like "oh no" and "Lord." The yellow kitchen gloves, often used with dangerous substances, were in the glove box on the passenger side where Hines was sitting. The plastic bag containing the fentanyl was behind the passenger seat where Hines was sitting. A handgun was found between the passenger seat where Hines was sitting and the passenger door. Hines admitted that the handgun had been in his pocket. Driver told Trooper that Hines hired her to drive the rental car.

10

The fentanyl was in a plastic bag that contained a hoodie that matched Hines's pants. This suggests he possessed the fentanyl. *See Stover*, 388 S.W.3d at 148 ("Although Mr. Stover denied ever accessing the trunk, he could not explain how his newly purchased watch came to be in the trunk next to the suitcase full of PCP. This additional evidence supports the inference that Mr. Stover had knowledge and control of the drugs."). Significantly, Trooper testified that Hines admitted he bought the three-quart sized bags containing the small blue pills of fentanyl. While Hines stated he thought the pills were oxy and did not know they were fentanyl, a fact finder "may infer that a person knows the nature of drugs in his actual possession." *State v. Haneline*, 670 S.W.3d 14, 31 (Mo. App. W.D. 2023). Trooper testified that anybody in the drug business knows those types of pills are a popular way to transport fentanyl. Those pills were located in the same bag as the kilogram of powder containing fentanyl.

Hines stated that the purpose of the trip to Colorado was to buy pills to support his children. This supports an inference that Hines intended to sell the fentanyl and was attempting to distribute or deliver it. "Evidence of divided bags supports the inference that a controlled substance is packaged for distribution." *Diaz*, 611 S.W.3d at 376-77. The fentanyl was in two different forms and in four separate packages. The amount of fentanyl recovered was substantial. During sentencing, the prosecutor stated that the amount of fentanyl was enough to kill every person in the State of Missouri three times over. The threshold amount for trafficking fentanyl is 20 milligrams. Trooper recovered at least 330 grams of fentanyl in powdered form alone. 330 grams is 330,000 milligrams;

11

that is 16,500 times the threshold amount for trafficking. Three quart-sized bags of pills containing fentanyl were recovered in addition to the powdered form. This also supports the conclusion that Hines attempted to traffic the fentanyl. *See id.* at 376 ("Here, the evidence was sufficient for a reasonable juror to find Defendant took one or more substantial steps toward the commission of the offense of trafficking based on the amount of methamphetamine in his possession and how it was packaged [into smaller bags].").

We find that the evidence presented was sufficient to support the trial court's finding of Hines's guilt beyond a reasonable doubt. The point is denied.

## Conclusion

The judgment is affirmed.

_____
Anthony Rex Gabbert, Chief Judge

All concur.